[Crim. No. 7874. First Dist., Div. One. June 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED MARK AMBROZIC, Defendant and Appellant.

**COUNSEL**

Ronald E. Mallen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant Ambrozic was convicted of violating Health and Safety Code sections 11530, 11531 and 11910, following a nonjury trial.

On the section 11530 charge, judgment sentencing him to state prison was imposed. On the remaining charges, sections 11531 and 11910, imposition of judgment was suspended and he was placed on probation for five years and three years, respectively. ▪ He has appealed from the judgment and from an order denying a new trial; he has not appealed from the orders grantng probation. However, we treat his notice of appeal as including the orders granting probation, as obviously intended. "[A] notice of appeal will be liberally construed to permit a hearing on the merits and avoid a dismissal because of some technical defect or irregularity." (*People v. Robinson,* 43 Cal.2d 143, 145 [271 P.2d 872].) The order denying a new trial being nonappealable (see Pen. Code, § 1237), the appeal therefrom will be dismissed.

There is no conflict as to the relevant evidence.

Law enforcement authorities held many arrest warrants resulting from Marin County narcotic violations observed through undercover police activity. Involved county, state and federal officers arranged to execute the warrants on February 23, 1968. Deputy Sheriff Teixeira, operating in an undercover capacity, had purchased narcotics from Ambrozic, one of the subjects of the arrest warrants. The transaction took place in a houseboat occupied by Ambrozic and others. On the day set for the arrests Teixeira was directed to enter the houseboat to determine whether any of the persons designated in the warrants were present. While other officers waited nearby Teixeira knocked on the door and was admitted. Inside he found several of the named persons, including Ambrozic. He then left the premises and reported this information to the waiting officers. A group of four or five officers then approached the houseboat. One of them knocked on the door and shouted, "It's the police." The door was opened by one Thomas for whom the officers held an arrest warrant. The officers walked in and arrested Thomas, Ambrozic and others.

▪ Ambrozic makes but one assignment of error. He contends that Officer Teixeira's described entry into the houseboat preceding the arrests was violative of Penal Code section 844 and the Fourth Amendment. We have concluded that the contention is wholly without merit.

Section 844 requires a police officer seeking to arrest a house's occupant to demand admittance and explain his purpose before he may break open a door or window.[1]

---

[1]The text of Penal Code section 844 follows: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purposes for which admittance is desired."

Teixeira's entry into the houseboat was not made to arrest any of its occupants. For that reason section 844 was inapplicable. His purpose and instructions were to learn if any of the persons named in the warrants were present, then to leave the premises and report the information to the waiting officers. His action was a continuation of the undercover investigation that finally led to the arrest of Ambrozic and others. Just as it is proper for undercover policemen, or "special employees" or "feigned accomplices" to observe and report criminal activities, it is also proper for them to ascertain and point out the whereabouts of the criminals in order that they may be arrested. In so doing neither Penal Code section 844 nor any constitutional stricture is violated.

The United States Supreme Court as recently as 1966, in *Lewis* v. *United States*, 385 U.S. 206, 208-209 [17 L.Ed.2d 312, 315, 87 S.Ct. 424], by Chief Justice Warren, stated: "[I]t has long been acknowledged by the decisions of this Court . . . that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents." In 1932 the then Chief Justice Hughes in *Sorrells* v. *United States*, 287 U.S. 435, 441-442 [77 L.Ed. 413, 416-417, 53 S.Ct. 210, 86 A.L.R. 249], stated: "Artifice and stratagem may be employed to catch those engaged in criminal enterprises. . . . The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law."

■ A principal, if not the paramount, purpose of section 844 is, as stated in *People* v. *Rosales*, 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489], "to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may also be on the premises when an arrest is made." ■ The peaceful voluntary admittance of Teixeira into the houseboat did not violate—rather it subserved—the policy inherent in the statute. And we deem it to be preferred police practice before entry to ascertain with reasonable certainty if persons sought to be arrested are within a building, particularly before the violent entry authorized by section 844 is resorted to.

Following our initial opinion and decision in this case, on a petition for rehearing, counsel for Ambrozic who waived oral argument vehemently insisted that a material issue presented to this court was ignored. He stated the disregarded issue as: "[W]as there compliance with the requirements of Penal Code section 844 by the arresting officers?" The sole issue presented to us on the appeal was stated in counsel's opening brief in this manner: "The specific question presented for review may be stated thusly:

'May a peace officer, part of an arrest party, enter a residence without identifying himself and revealing his purpose, merely because he is dressed in the garb of an undercover agent?' " In this brief he conceded section 844 was inapplicable to the "arresting officers," saying, "Nor is it disputed that the officers who broke into the houseboat Becky Thatcher had reason to believe that evidence was in danger of being destroyed." In his closing brief the same *single* question was posed as: "[W]hether police officers approaching a residence with warrants, intending to arrest such persons, may conduct a preliminary search of the premises in order to ascertain the presence of the sought individuals."

Our appellate courts have frequently declared that they will not grant rehearings on points newly raised in the petition therefor. (See *Pacific Finance Corp.* v. *Lynwood,* 114 Cal.App. 509, 516 [300 P. 50, 1 P.2d 520], referring to earlier authority describing such a practice as "pernicious"; 3 Witkin, Cal. Procedure (1954) p. 2407.) We have nevertheless considered counsel's tardy argument.

■ A member of the party of arresting officers knocked on the houseboat door. When it was opened by Thomas he displayed his badge, and announced that they were police officers conducting a narcotic investigation. The officers then walked in and made the arrests. This was substantial compliance with section 844. (See *People* v. *Marshall,* 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Foster,* 274 Cal.App.2d 778 [79 Cal.Rptr. 397].) ■ Furthermore, compliance with section 844 was excused, since, as conceded by counsel, the officers had reason to believe narcotic evidence was in danger of destruction. (See *People* v. *De Santiago,* 71 Cal.2d 18, 28 [76 Cal.Rptr. 809, 453 P.2d 353].)

The judgment and the orders granting probation are affirmed; the appeal from the order denying a new trial is dismissed.

Molinari, P. J., and Sims, J., concurred.