[Crim. No. 32853. Second Dist., Div. One. Jan. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EUGENE POWELL, Defendant and Appellant.

**COUNSEL**

George Eugene Powell, in pro. per., Paul Arthur Turner and Harvey A. Sniderman, under appointments by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, J.*** —This is an appeal from a judgment of conviction and an order denying a motion for new trial. The latter is not an appealable order, and the purported appeal therefrom must be dismissed. (*People v. Henderson* (1977) 19 Cal.3d 86, 90, fn. 3 [137 Cal.Rptr. 1, 560 P.2d 1180]; *People v. Ambrozic* (1970) 8 Cal.App.3d 867, 870 [87 Cal.Rptr. 899].)

Appellant and George Reddic were charged with eight counts of robbery (Pen. Code, § 211), and one count of assault by means of force likely to produce great bodily injury and with a deadly weapon (Pen. Code, § 245, subd. (a).) A great bodily injury sentence enhancement (Pen. Code, § 12022.7) was alleged with the first robbery count (count I), and firearm use allegations (Pen. Code, §§ 12022, subd. (a), 12022.5, 1203.06, subd. (a)(1)) were alleged for each of the robbery counts. The assault count was dismissed. Appellant was convicted of each of the robbery counts, and the great bodily injury and firearm use allegations were found to be true. Reddic was acquitted on all robbery counts.

The court sentenced defendant on each count for which he was convicted. The great bodily injury enhanced robbery count was denominated the principal term. Defendant received consecutive sentences for three robbery counts (counts I, II, III); the remaining robbery sentences were concurrent. He received credit for postsentence custody, but without good time/work time credits. Appellant urges[1] three grounds for reversal; that the trial judge failed to properly state the reasons for her sentence choice; denial of good time/work time credit for presentence custody; and prosecutorial misconduct in closing argument. Finding no merit in these contentions, we affirm.

### FACTS

The sufficiency of the evidence is not disputed and may be briefly summarized for purposes of the appeal.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Appellant's original counsel on appeal, appointed by the court, concluded that the appeal was frivolous and without merit. In view of this conclusion, his appropriate request to be relieved was granted, and the present appellate counsel was appointed. (See *People v. Wende* (1979) 25 Cal.3d 436, 442 [158 Cal.Rptr. 839, 600 P.2d 1071].) The contentions discussed are those raised by present counsel.

A dice game was in progress during the early morning hours of October 15, 1978, at an automobile agency in the Compton area of Los Angeles. The nine participants in the game were well protected from intruders: the game was in the agency sales office, inside a fenced yard watched over by a security guard. A man armed with a pistol burst through the office door, pushing the security guard in front of him and fired two rounds into the ceiling. He announced that it was a holdup, and ordered everyone to stand against the wall. The man wore a nylon stocking over his face, covering all or most of it except for a tear in the area of his eyes.

Two occupants slipped into a side room, but were ordered back by the man with the gun, who next ordered all occupants to disrobe and to throw their clothes and money onto a pool table in the room. He ordered one of the occupants to fill up a pillow case, which he produced, with the clothes and money. One of the victims, Osie Harrell, thought the gun had been emptied, said so and lunged for the weapon. He was shot twice, once in the foot and once in the thigh. He later identified the assailant as appellant. Of the nine victims, Harrell was one of four who did not testify that he had known appellant before the robberies. All but one (the security guard) visually identified appellant as the robber; the security guard identified him by voice. One had known appellant for one and one-half years, another for two to three years, a third for about a year, one for six years and one for nine years.

Several of the victims testified that just before shooting Harrell, appellant made a statement to the effect that he had not shot anyone and should.[2]

Appellant had been at the dice game earlier that evening, and had arrived with Reddic, his uncle. He had left alone. The evidence against Reddic consisted principally of his relationship with appellant, their arrival together earlier in the evening, and inferences from Reddic's later comments and actions.

Appellant's defense was alibi. He denied arriving at the dice game with Reddic, although he admitted that he had been there earlier in the

---

[2]The various versions of remark were: "I ought to shoot me somebody;" "I haven't shot anybody. I should shoot one someone tonight;" and (looking at Harrell), "You think I should shoot you?"

evening. He testified that he left before midnight, went home and stayed there.

## I

### *The Court Properly Stated Reasons for the Sentence Choice.*

As we have seen, the court directed that its sentences on two subordinate terms (counts II and III) run consecutive to each other and to the principal term (count I). ■ A decision that sentences run consecutively is, of course, a sentence choice (Cal. Rules of Court, rule 405(f); *People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66]), for which the trial court is required to state its reasons at the time of sentencing. (Pen. Code, § 1170, subd. (c); Cal. Rules of Court, rule 443.)

■ Appellant's argument that the court made an insufficient statement of its reasons for consecutive sentences is based on his assertion that the entire statement of the court is contained in the following passage: "[P]ursuant to Penal Code section 1170.1, subdivision A, and the court, not having relied upon the fact underlying the consecutive terms in selecting the principal term, and finding no factors in mitigation, now specifically orders that Counts II and III are to run consecutive to the principal term, that is, one following the other." From this he argues that the mere absence of mitigating factors is not enough to justify consecutive sentencing.

But the record reveals that the court said far more. The trial judge denied probation, noting that appellant was ineligible to receive it, having been found to have personally used a firearm in committing the robberies. (Pen. Code, § 1203.06, subds. (a), (b); *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328].) She then listed the circumstances of aggravation, describing them as such: defendant was on probation for a similar crime when the instant felonies were committed (Cal. Rules of Court, rule 421(b)(4)); there were multiple victims (Cal. Rules of Court, rule 421(a)(4)); who were particularly vulnerable (Cal. Rules of Court, rule 421(a)(3)), and appellant had fled the jurisdiction. These aggravating factors are properly considered in consecutive sentencing. (Cal. Rules of Court, rule 425(b).) The judge also pointed out that there was "no rhyme or rea-

son" for the shooting, but quite correctly did not use this as an aggravating factor since it was being recognized for enhancement pursuant to Penal Code section 12022.7. (Pen. Code, § 1170, subd. (b).)

All of this occurred at the probation and sentencing hearing held on April 26, 1978. The court's clear articulation of the reasoning for its sentence choice fully satisfied the legislative purpose of providing a statement which would permit meaningful appellate review of the exercise of discretion in sentencing. (*People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838 [155 Cal.Rptr. 780].)

It is true that the court did not recite the aggravating circumstances a second time, when sentence was literally pronounced. But no purpose would have been served by such repetition. (See *People* v. *Blessing, supra,* 94 Cal.App.3d at pp. 838-839.) We hold that the probation and sentence hearing at which sentence was pronounced was "the time of sentencing" and that all legal requirements for a proper sentence were met.

II

*The Issue of Presentence Credits for
Good Time and Work Time Should
Not Be Decided on This Appeal.*

The trial court gave appellant full credit for the time he was incarcerated prior to sentence. However, the court did not enhance that credit for good behavior or labor services. Appellant claims the additional credits under Penal Code sections 2900.5 and 4019. The issue of whether a person in his position is entitled to them is now before the Supreme Court in *People* v. *Sage* (Crim. No. 20997), *People* v. *Brown* (Crim. No. 20998) and *In re Davis* (Crim. No. 20999).* We are confident that if the court resolves the issues in appellant's favor, the appropriate credits will be given administratively by the board of prison terms. If they are not, they may be secured in an appropriate writ proceeding. (See *People* v. *Wende, supra,* 25 Cal.3d 436, 443, fn. 4.) It is not appropriate for this court to pass on them now.

---

*Reporter's Note: For Supreme Court opinion in *People* v. *Sage* see 26 Cal.3d 498. On June 18, 1980, *People* v. *Brown* and *In re Davis* were retransferred to the Court of Appeal for reconsideration in light of *People* v. *Sage.*

## III

### *The Prosecutor Did Not Commit Misconduct.*

Two statements by the prosecutor, made in final argument, are cited as misconduct. Appellant argues that they are prejudicial, requiring reversal.

■ No objection or request for jury admonition was made at the time of the alleged misconduct. The rule is well-established that this omission makes the misconduct (if it were such) noncognizable on appeal unless the case is closely balanced or the remarks are such that a curative admonition would have been useless. (*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 723-724 [135 Cal.Rptr. 392, 557 P.2d 976]; *People* v. *Haslouer* (1978) 79 Cal.App.3d 818, 833 [145 Cal.Rptr. 234]; *People* v. *Martinez* (1978) 82 Cal.App.3d 1, 17 [147 Cal.Rptr. 208].) Neither criterion is satisfied in this case.

■ Appellant urges that the prosecutor's statements implied that each defense counsel had fabricated a defense, and that the statements relied on matters outside the record. Before recounting the prosecutor's statements assigned as error, it is useful to place them in the context in which they were made.

The only real issue in the case, insofar as appellant was concerned, was identity. Understandably his trial counsel directed the major effort of his summation to an attack on the identification evidence. In doing so, he embellished his argument by telling of a psychology professor's classroom experiment on identification in a stress situation (it was related that the student witnesses were consistent only in their dissimilarity in describing the episode just staged in front of them). He followed this by reading from three newspaper clippings about mistaken identity in specific criminal investigations and cases.

Reddic's counsel was worried that his client might be convicted on the basis of his association with appellant. To obviate that risk, he related that, after John Wilkes Booth's assassination of President Lincoln, his brother Edwin Booth, the famous Shakespeare actor, had lost work for a time. Edwin Booth was entirely innocent of the crime, but suffered unfairly nevertheless because he was related to the assassin.

We now turn to the prosecutor's statements. In the extract set out here, we have placed brackets around the passages which appellant has *not* set out in his argument.

["Now, both attorneys have made references to matters that really don't pertain to this case. I tried to kind of deal with the case that's before us. One has talked about Civil War history with Edwin and John Booth. And one referred to psychology class literature and read you excerpts from newspapers.] You must realize that defense attorneys have to do the best with what they have to work with. And often defendants are guilty. And consequently it is easy to, you know, get off into these tangents and argue about the kind of makebelieve cases because you know the hard reality of the present case is too much for them. So they are kind of prone, you know, talking about things that really don't pertain to the case that we have.

["Like even in these little excerpts that Mr. Skyers talks about, none of them was a jury trial. We have 14 red-blooded persons to listen to the case. And I think that makes a difference. Now, in this particular case you heard all the evidence that there is to put on. You have to determine what the facts are. You have to determine which witness spoke truthfully."]

(Mr. Skyers was appellant's trial counsel.)

The foregoing passage is from the beginning of the closing summation. The other statement urged by appellant appears at the end: "So I think this is a strong case and I think if you just understand the position of the defense attorneys, that, you know, these little stories they use in every case because every case that ever comes to a courtroom to a jury has an identification problem. Even if it is a rear ender where you have to identify who was driving the car that ran into you. They can pull out these little excerpts to every jury from now until they die. But they are not going to fool—they fool you sometimes, but they are not going to fool you all the time. And this is too smart a jury to be fooled by these two defense attorneys."

It is apparent that the prosecutor was simply rebutting the embellishments presented by defense counsel in their summations. He was not attacking appellant's alibi defense, but arguing that the prosecution had sustained its burden of proving that appellant had committed the crimes

charged. (Cf. *People* v. *Bain* (1971) 5 Cal.3d 839, 847 [97 Cal.Rptr. 684, 489 P.2d 564].) Read or heard in context, the remarks did not suggest fabrication by defense counsel, or rely on material outside the record. (See *People* v. *Haslouer* (1978), *supra,* 79 Cal.App.3d at p. 834 [in which, apparently, defense counsel tried to read to the jury the same newspaper clipping used in this case]; *People* v. *Bush* (1978) 84 Cal. App.3d 294, 308 [148 Cal.Rptr. 430].) Certainly, the prosecutor's remarks were more restrained than those approved in a number of other cases. (See, e.g., *People* v. *LaFontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729]; *People* v. *Dale* (1978) 78 Cal.App.3d 722, 733 [144 Cal.Rptr. 338].)

Even if it were concluded that the remarks were misconduct (which they were not), they were not prejudicial. As we have seen, defense counsel made no comment about them at the time. The evidence of guilt was overwhelming. Nearly all of the victims of appellant's group robbery identified him by sight, and most of them had known him for considerable periods of time. It is not reasonably probable that a different result would have been reached but for the statements (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]); indeed it is clear beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]) that the result would have been the same.[3]

The judgment of conviction is affirmed. The purported appeal from the order denying motion for new trial, is dismissed.

Lillie, Acting P. J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 27, 1980.

---

[3]The usual standard for reversible error based on prosecutorial conduct is *Watson,* but *Chapman* may be applicable if constitutional error is committed. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 214-215, fn. 4 [152 Cal.Rptr. 141, 589 P.2d 396].)