[No. B136294. Second Dist., Div. Two. Aug. 2, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT JOHN DOWNEY, JR., Defendant and Appellant.

**COUNSEL**

Robert J. Waters and Ross A. Nabatoff for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Jeffrey B. Kahan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NOTT, J.**—Robert John Downey, Jr., appeals from the judgment entered following revocation of probation previously granted upon his plea of no contest to possession of cocaine, misdemeanor driving under the influence of alcohol and/or drugs, misdemeanor possession of a concealed firearm in a vehicle, and misdemeanor being under the influence of a controlled substance. (Health & Saf. Code, § 11350, subd. (a); Veh. Code, § 23152, subd. (a); Pen. Code, § 12025, subd. (a)(1); Health & Saf. Code, § 11550.) He was sentenced to three years in prison, with jail terms imposed on the misdemeanors.

Appellant contends that (1) the trial court erroneously believed it was required to impose a consecutive term for the felony offense; (2) the misdemeanors must be deemed to run concurrently with each other because

the trial court failed to designate how they were to run in relation to each other; (3) since the misdemeanor counts must be deemed to run concurrently, the custody credits exceeding the time imposed on these counts must be applied to the felony count; (4) if the misdemeanor counts are deemed to run consecutively, credit for 240 days in county jail imposed as a condition of reinstating probation should apply to each of the probationary counts; (5) the trial court failed to state reasons for imposing a state prison term; (6) the trial court erroneously relied on circumstances after appellant was granted probation to impose the upper term for the felony offense; (7) the trial court relied on incorrect facts and impermissible factors in selecting the upper term; (8) the trial court improperly found aggravating factors stemming from appellant's addiction; (9) the trial court failed to consider appellant's addiction and his voluntary entry into a rehabilitation program as factors in mitigation; (10) the trial court did not give defense counsel an opportunity to object to the sentence; (11) assuming the misdemeanor counts run consecutively to each other, the trial court failed to state reasons for imposing them consecutively to each other and for imposing the felony sentence consecutively to the misdemeanors; (12) the trial court abused its discretion in not reinstating probation and in imposing a prison term; (13) the trial court erred in failing to institute civil proceedings to consider a California Rehabilitation Center (CRC) commitment; and (14) the $600 restitution fine and the $600 parole revocation fine imposed at the time of sentencing after revocation of probation must be reduced to $200, the amount imposed at the time probation was granted.

### FACTS AND PROCEDURAL BACKGROUND

The probation report discloses that on the morning of June 23, 1996, after appellant was stopped for speeding, a sheriff's deputy smelled burnt marijuana inside appellant's vehicle and commenced a narcotics investigation. The deputy recovered a container holding a substance resembling cocaine in powder form, another container holding a similar substance as well as a substance resembling tar heroin, and a baggie containing Valium, unidentified pills and a substance resembling rock cocaine. Under the seat was an unloaded revolver, and in the glove compartment was a box containing four .38-caliber special rounds. Appellant's urine tested positive for morphine/heroin, marijuana, Valium and cocaine. He was arrested and released on bail.

On July 16, 1996, the sheriff's department was called by a person who found appellant unconscious in a bed in a private residence. Deputies were unable to revive appellant, who appeared to be under the influence of a controlled substance. Appellant was taken to a hospital, where he refused to be treated and refused to provide a urine sample. He was transferred to a hospital jail ward.

Appellant was charged in count 1 with possession of cocaine, in count 2 with possession of heroin, in count 3 with driving under the influence, and in count 4 with possession of a concealed firearm in a vehicle, these four counts based on events occurring on June 23, 1996. He was charged in count 5 with being under the influence of a controlled substance on July 16, 1996. On July 29, 1996, appellant entered not guilty pleas, and the trial court released him to a secure rehabilitation program. On September 11, 1996, pursuant to a plea agreement, appellant entered an open no contest plea to counts 1, 3, 4, and 5. It was agreed that he would not receive an immediate prison sentence.

On November 6, 1996, the trial court suspended imposition of sentence and placed appellant on summary probation for three years on counts 1, 3, and 4, imposing nine days in county jail and awarding credit for nine days served.[1] Among the conditions of probation, appellant was ordered to remain in his inpatient rehabilitation program for at least six months and then to enter an outpatient program. As to count 5, the trial court denied probation and sentenced appellant to 90 days in county jail with credit for 90 days spent in the inpatient rehabilitation program. Count 2 was dismissed.[2]

On April 22, 1997, the trial court modified appellant's terms of probation to enable him to be insurable and thus to obtain gainful employment as an actor, stating that the "thrust" of appellant's probation was to effect his rehabilitation and that employment was "the one important ingredient to rehabilitation." In the event of an alleged probation violation, a hearing would be set so as not to interfere with appellant's immediate shooting schedule, and the trial court would stay execution of any in-custody time resulting from a finding of violation of probation until completion of appellant's participation in film production as required by contract. In addition, the trial court required random drug testing by an outside laboratory twice a week.

On October 17, 1997, appellant's drug rehabilitation counselor, who had been working with appellant on location, testified that appellant had ingested

[1]The trial court explained why it placed appellant on summary probation as follows: "The difference between summary and formal probation, essentially, is I'm not going to have this administered through the probation department. I frankly think that the department's got a pretty heavy workload. I also think you probably will respond better under the guidance of both the prosecution and your attorney as well as this court, so by implementing the program I'm about to, we accomplish all the same things without the use of the probation department."

[2]As to count 4, possession of a firearm, the trial court stated, "I'll impose a concurrent grant of probation on that with the same terms and conditions." The minute orders of proceedings on that date state "Sentence on Cts. 3 & 4 is concurrent and same as Ct. 1 . . . ." and "[S]entence on Count 3 is the same as and concurrent with probation on Count 1" and "[S]entence on Cou[n]t 4 is the same as and concurrent with probation on Count 1."

alcohol and controlled substances over a period of four or five days and had not completed his required drug testing. The trial court stated it would have remanded appellant to custody immediately but for the modified terms of probation. The court imposed additional terms of probation including residence at a secure facility, daily drug testing, and employment of a 24-hour bodyguard. The matter was continued to December 8, 1997, to permit appellant to comply with his contractual obligations.

On December 8, 1997, the trial court found, based on appellant's counselor's earlier testimony, that appellant had ingested controlled substances and/or alcohol and had refused to submit to testing in violation of the terms and conditions of probation. Appellant's probation on counts 1, 3, and 4 was revoked and reinstated for three years, commencing on that date. Appellant was ordered to serve 240 days in county jail with credit for 60 days for time spent in the lockdown facility prior to the hearing, with orders that he enroll in a residential drug rehabilitation program of his choosing at the conclusion of the jail term. The court stated, "With your help we will succeed. Without your help I almost assure you you are going to prison. Warehousing is a relative term. I'm going to start here warehousing you locally but take it on no uncertain terms I am willing to put you in state prison. I don't care who you are. What I care is there is a life to be saved from drugs and there's no good reason you can give me that you can't get that done."

On March 19, 1998, a hearing was held to review the terms of appellant's upcoming release from custody into a residential program. The trial court modified the conditions of probation, providing, inter alia, for daily drug testing, and ordered appellant to enter an outpatient program after he spent 120 days in the inpatient program. The court advised appellant that "we have already exhausted the rehabilitative spectrums for programs" and that if he were found in violation of probation, he would go to prison, stating, "If you force me and tell me that you are refusing to rehabilitate, I will put you in state prison on the next violation if that were to happen. I hope it doesn't. [¶] Do you understand that?" Appellant replied, "Yes, I do."

On June 22, 1999, appellant waived his right to a formal probation violation hearing and admitted that he had failed to submit to testing in violation of probation. Probation was revoked and appellant was remanded to the Los Angeles County Sheriff for housing in the custodial Impact drug treatment program, located at the Biscailuz Recovery Center. Sentencing was continued to August 5, 1999.

## SENTENCING

At the sentencing hearing, the court considered the testimony of the admissions director at the Impact program, who stated that appellant was

progressing well in the Impact program and recommended that he complete the program. The court also considered the supplemental probation report, which recommended reinstatement of probation; a series of negative drug test results; reports from appointed psychiatrists; and a letter from the program coordinator at the Impact treatment center, who recommended that appellant continue treatment there. Defense counsel argued that, consistent with the views of the experts whose reports the court had considered, appellant should be continued on probation and permitted to continue at the Impact program. The prosecutor argued that appellant was an addict who should be committed to CRC.

The trial court observed that, upon revocation of probation, it had three choices: continuing probation on the same terms and conditions, continuing probation on different terms and conditions, or denying probation and sentencing appellant to prison. The trial court further observed that it was permitted to consider only those circumstances existing at the time probation was granted and the defendant's conduct from the original grant of probation until the first reinstatement of probation, stating, "And I want to make the record clear. I'm not considering that which occurred after that reinstatement, which in this court occurred December 8th of '97."

After considering the arguments of counsel, the trial court gave a lengthy statement of reasons for its sentence choice. The court indicated that in granting probation, it had "elected . . . . to emphasize the rehabilitative aspects of sentencing," but, despite a series of programs and time in custody, which the court enumerated, appellant had violated the conditions of his probation again. The court noted that appellant "performs well when he's in an institutional setting" but relapses upon his release. The court further noted that, despite this, the comments and recommendations of the experts that appellant be continued in the treatment programs had not changed between the time of the original grant of probation and the time of sentencing.

The court stated that there were "two overriding concerns here." The first was that despite appellant's addiction, "there's some voluntary choices being made here and those choices are whether he's going to use or not use," and appellant did not appear to be committed to not using drugs. The second was the issue of public safety. The court stated, ". . . I have no confidence here that [appellant] can stay at his liberty under any circumstances in which I could have any level of comfort that I could protect the public safety and maybe prevent him from eventually killing himself or someone else. [¶] And, secondly, I don't believe for a minute from what I'm reading through all of these reports that [appellant] has made any commitment—serious commitment—to stay away from drugs. . . . [¶] . . . [¶] So I believe under

these circumstances that now we move away from the issues of rehabilitation and we now go into the areas that I've outlined to you earlier. And now the priorities have to change because now we have to protect society. We punish this defendant—hopefully in a way that's sensitive to his addiction; that doesn't necessarily mean a CRC commitment—and hopefully deter others."

After considering appellant's personal statement and additional arguments of counsel, the trial court concluded it would not reinstate probation, stating, "I feel under these circumstances here that my analysis of this case is correct and that the overriding concern for me now is the issue of public safety and taking the choice out of the defendant's hands." The trial court declined to commit appellant to CRC, stating reasons for that decision.

The court sentenced appellant to 180 days in county jail on count 3, driving under the influence, with credit for 180 days served pursuant to the reinstatement of probation ordered on December 8, 1997, and to 180 days on count 4, possession of a firearm, with credit for 180 days in the earlier court-ordered program. The court also imposed 90 days on count 5, with credit for 90 days. The court stated, "And that puts us in a position essentially of crediting some of his conduct against the misdemeanors. That's not all the credits."

The trial court imposed the upper term of three years in prison on count 1. In selecting the upper term, the trial court found two factors in mitigation, that appellant had no prior record and had acknowledged wrongdoing at an early stage of proceedings. The trial court found in aggravation that the manner in which the crime was carried out indicated planning; that appellant's conduct, speeding while driving under the influence of a number of drugs and while in proximity to a weapon and additional drugs, involved the threat of harm; that appellant's conduct between the date of the grant of probation, November 6, 1996, and the date on which probation was reinstated, December 8, 1997, indicated that he had failed to perform satisfactorily on probation; and that after his arrest on four counts he had been released on bail or on his own recognizance and committed yet another offense thereafter. The trial court determined that the factors in aggravation outweighed those in mitigation.[3]

The court ordered the prison term to be served consecutively with the misdemeanor counts, stating, "Now, that term has to be served under the law

___

[3]In pertinent part, the trial court stated, "[T]his defendant, while under the influence certainly, substantially under the influence of a number of different drugs, was stopped for speeding. He was driving under the influence. In the car various controlled substances were located. There was a gun in the passenger compartment of the car. It was unloaded. It was in the glove box, which was near the—or at least within arm's reach of this defendant. He had those additional drugs with him, which would have permitted him to continue on his evening while staying intoxicated. [¶] I believe those facts also support [California Rules of Court,

consecutive to the misdemeanor under *People v. Fugate*, F-U-G-A-T-E, 219 Cal.App.3d 1408 [269 Cal.Rptr. 37]. The felony counts are the only counts that have the determinate sentencing law apply to them. The misdemeanor counts do not. That's a clear statement of law. It makes little difference practically in this case because on the misdemeanor counts this defendant has already served the time."

The trial court awarded 201 days' credit against the prison term, calculated as follows: 120 days for the program completed pursuant to the December 8, 1997, order reinstating probation, 45 days plus 23 days' conduct credit for the time spent in county jail custody in the Impact program, and nine days plus four days' conduct credit for the time served following his arrest.

On October 12, 1999, a hearing was held on appellant's motion for bail pending appeal, in which he asked that he be remanded to county jail with housing in the Impact program, and on his request that the trial court on its own motion recall the sentence pursuant to Penal Code section 1170, subdivision (d). These motions were supported by various documents, some filed under seal. Defense counsel referred to the opinion of the director of Walden House, the prison's private drug rehabilitation program in which appellant was then participating, and argued that, as the director agreed, it was in the best interests of appellant, as well as of society, to return appellant to the Impact program at the county jail rather than continue him in the prison drug program. The trial court responded to each of appellant's arguments, including the claim in support of the motion for bail on appeal that various errors made by the court constituted substantial legal questions on appeal. The motions were denied. The court observed, "What tips the scales here, in my judgment, is that these aggravating factors as outlined— and clearly within the purview of the Rules of Court, which judges are required to use; not exclusively, but certainly use—clearly indicate aggravating factors outweigh mitigating factors in this case based on the conduct of this defendant."

---

rule] 421(a)(9), which is this crime did involve the threat of harm under these circumstances for a person in that state of sobriety under those circumstances with proximity to a weapon with additional drugs there of significant quantity . . . .

"I also am permitted under rule 408 of the Rules of Court to take into consideration that the arrest in this particular case as to counts 1, 2, 3 and 4—the arrest was for two counts of felony possession of controlled substance, one count of driving under the influence, one count of having a loaded weapon in a vehicle. [¶] Those counts occurred, and then after the defendant was released from custody, while, I believe, on bail—I'm not sure if it was an O.R. out of the county jail; I believe it was bail—then the crimes that occurred in count 5 occurred, and that I find is an aggravating circumstance."

DISCUSSION

## I. *Refusal to reinstate probation*

As indicated, at the sentencing hearing, the trial court read and considered the probation report, which recommended that the court reinstate probation. The court considered the report of the court-appointed psychiatrists, which recommended that appellant continue to be treated in a structured sober living environment with psychotherapy, participate in a 12-step program, and be treated with psychiatric medication for depression and possibly to reduce opiate cravings. The court also considered a letter from the program coordinator at Impact, the custodial drug program at which appellant had been housed prior to sentencing, which indicated that appellant was progressing well in the program. The director of admissions at Impact testified that appellant had responded well to that program and he recommended that appellant remain there for at least a total of 60 days to complete the program, further recommending that he then be transferred to the Impact residential program in Pasadena.

 The trial court, however, refused to reinstate probation and sentenced appellant to prison. Appellant contends that this decision constituted an abuse of discretion.[4]

Appellant asserts that the trial court was "acting as [appellant's] probation officer" by virtue of the grant of summary probation and thus that it abandoned its role as an impartial judicial officer, further claiming that the trial court singled out appellant for what was a uniquely harsh sentence, given his lack of any previous criminal record and his relatively minor offenses, because of its "frustration and personal bias towards [appellant] after [appellant] failed [the court's] attempts to rehabilitate him." He argues that he must be resentenced by a different judge.

 Sentencing choices such as the one at issue here, whether to reinstate probation or sentence a defendant to prison, are reviewed for abuse of discretion. "A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner." (*People v. Delson* (1984) 161 Cal.App.3d 56, 62 [207 Cal.Rptr. 244].) A court abuses its discretion "whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez*

---

[4]Given defense counsel's vigorous argument that the court should reinstate probation and not impose any other sentence, there was no waiver of this issue for purposes of appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

(1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) We will not interfere with the trial court's exercise of discretion "when it has considered all facts bearing on the offense and the defendant to be sentenced." (*People v. Vargas* (1975) 53 Cal.App.3d 516, 533 [126 Cal.Rptr. 88].)

■ Here, we cannot find that the trial court abused its discretion in refusing to reinstate probation and in sentencing appellant to prison. It is clear that the trial court did not abandon its role as an impartial judicial officer, and to the extent appellant asserts judicial bias, this claim is waived for failure to raise an appropriate objection in the trial court. (*People v. Hines* (1997) 15 Cal.4th 997, 1040-1041 [64 Cal.Rptr.2d 594, 938 P.2d 388].) The trial court considered appellant's history, the arguments of counsel, and the reports submitted at sentencing. It was not, however, required to follow the recommendations in those reports. (*People v. Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237]; *People v. Delson, supra,* 161 Cal.App.3d at p. 63.) The court gave a lengthy and reasoned explanation for its sentence choice, resting the decision not to again reinstate probation on appellant's demonstrated lack of commitment to carrying out the terms and conditions of his probationary grant and the need to protect appellant's and the public's safety. Nothing in the record suggests, as does appellant, that the trial court's sentence choice was influenced by media criticism that the trial court was "being too soft" on appellant.[5] Its determination that a prison term was required might reflect the same frustration that any other judicial officer might have felt and the decision is one which any other judicial officer might well have made under the same circumstances; it reflects no personal animus toward appellant. In the absence of any showing that the court's decision was arbitrary or capricious, we will uphold it on appeal.

II. *Failure to institute civil proceedings to consider a CRC commitment*

■ Appellant contends that the trial court erred in failing to institute civil proceedings to consider the appropriateness of a CRC commitment. He cannot prevail on this claim.

As indicated above, the prosecutor requested that the trial court commit appellant to CRC. In his response, defense counsel stated that the threat of prison was "irrelevant to the disease and curse of severe drug addiction such as [appellant] has" and that despite an addict's relapses, treatment was the appropriate alternative, adding, "The fact that the judge may have taken very strong measures to try to accomplish what everybody wants to accomplish,

---

[5]Appellant relies upon a Los Angeles Times editorial to this effect, dated December 10, 1997, which was included among the exhibits offered in support of his motion for bail pending appeal and is contained in the record on appeal.

sobriety, does not mean that we should give up hope and say, 'this is the end.' [¶] No one is here from CRC. No one knows what the programs are like. I don't think [the prosecutor] has talked to one person at CRC, met one person there, been there, or knows anything."

In declining to order a CRC commitment, the trial court, which indicated it had recently spoken with a representative of CRC, stated, "The CRC commitment that was recommended by the district attorney, in my judgment, is a totally problematic commitment because the CRC commitment essentially puts [appellant] in an institutional setting and a rehabilitation program. [¶] While I think he'd be eligible for that program—I can't find any statutory ineligibility—that program is basically set up to permit basically rehabilitation for a period from 8 to 9 and a half months with a minimum time requirement of 9 and a half months, and then they are CRC paroled and then it is the policy at CRC to return people who violate parole to that facility. [¶] The message to be returned—when violating again and again and again, to be returned to treatment, is the wrong message, in my particular view, in this particular case based on its history. And that's why I have declined to do a CRC civil commitment of this defendant."

Appellant now asserts that the trial court erred by imposing its own standard for a CRC commitment and rejecting the statutory criteria.[6] However, whether or not the trial court stated proper reasons for rejecting a CRC commitment, the defense argument at the sentencing hearing can only be construed as a rejection of a CRC commitment, and this precludes remand for determination of whether such commitment would be appropriate. (See *People v. Planavsky* (1995) 40 Cal.App.4th 1300, 1311-1312 [47 Cal.Rptr.2d 723] [defendant must request placement in CRC to preserve the issue for appellate review].)

III. *Imposition of a consecutive term on the felony count*

■ Appellant contends that, although the trial court had the discretion to impose either a consecutive or concurrent sentence on count 1, felony possession of cocaine, it imposed a consecutive sentence because it erroneously believed it was required to do so. It appears that appellant is correct.

In imposing the consecutive sentence on the felony count, the trial court stated, "Now, that term has to be served under the law consecutive to the

---

[6]If it appears that the defendant is addicted or in imminent danger of becoming addicted to narcotics, the trial court must initiate commitment proceedings unless it finds that the defendant is unfit for such commitment by reason of "such a pattern of criminality that he or she does not constitute a fit subject for commitment." (Welf. & Inst. Code, § 3051; *People v. Granado* (1994) 22 Cal.App.4th 194, 200 [27 Cal.Rptr.2d 286].)

misdemeanor under *People v. Fugate* . . . .” Appellant correctly points out that *People v. Fugate* (1990) 219 Cal.App.3d 1408 [269 Cal.Rptr. 37] did not so hold. At the postsentencing hearing on appellant's motion to grant bail pending appeal, the trial court and counsel discussed this claim of error. The trial court indicated that an error in punctuation had been made by the court reporter, and explained, “The reference there to ‘Now, that term’ is the term I had just imposed of three years in state prison. That term would be consecutive to a misdemeanor commitment, and that term would have to have obviously statements of reasons; a felony term. [¶] Put the period after the word ‘misdemeanor.’ ‘Under *People v. Fugate* the felony counts are the only counts that have the determinate sentencing law apply to them. The misdemeanor counts do not.’ ”

Although the trial court thus explained its citation to *Fugate* as holding that a statement of reasons for consecutive sentencing was not required as to misdemeanor counts, it remains the case that the trial court indicated its belief that “. . . that term [the felony term] has to be served under the law consecutive to the misdemeanor.” This represents an incorrect understanding of the law, which imposes no such requirement.

“[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. [Citations.]” (*People v. Penoli* (1996) 46 Cal.App.4th 298, 302 [53 Cal.Rptr.2d 825].) “Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]” (*Id.* at p. 306.) Where, as here, a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination. (*People v. Sherrick* (1993) 19 Cal.App.4th 657, 661 [24 Cal.Rptr.2d 25]; *People v. Manners* (1986) 180 Cal.App.3d 826, 834-835 [225 Cal.Rptr. 798].)

IV. *Consecutive or concurrent misdemeanor counts*

■ Relying on Penal Code section 669, appellant contends that since the trial court never indicated whether the sentences on the misdemeanor counts were to be served concurrently or consecutively with respect to each other, they must be deemed concurrent. He further contends that the presentence credits exceeding 180 days awarded against the misdemeanor counts must then be applied to the felony count. This claim, too, is well taken.

Penal Code section 669 provides, in pertinent part, “When any person is convicted of two or more crimes, whether in the same proceeding or court or

in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively. . . . [¶] In the event that the court at the time of pronouncing the second or other judgment upon that person had no knowledge of a prior existing judgment or judgments, or having knowledge, fails to determine how the terms of imprisonment shall run in relation to each other, then, upon that failure to determine, or upon that prior judgment or judgments being brought to the attention of the court at any time prior to the expiration of 60 days from and after the actual commencement of imprisonment upon the second or other subsequent judgments, the court shall, in the absence of the defendant and within 60 days of the notice, determine how the term of imprisonment upon the second or other subsequent judgment shall run with reference to the prior incompleted term or terms of imprisonment. Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."

As previously indicated, at the initial grant of probation in November 1996, the trial court imposed concurrent probationary grants on counts 3 and 4 and a jail sentence, which was deemed to have been served, on count 5. At sentencing upon revocation of probation in August 1999, the trial court imposed sentences of 180 days each on counts 3 and 4, awarding credit of 180 days, as to each, and reiterated the 90-day sentence and the award of 90 days' credit on count 5. The court ordered the term on the felony count, count 1, to be served consecutively, but did not state how the misdemeanor terms were to run with respect to each other.

Respondent argues that the trial court *did* sentence appellant to consecutive terms on the misdemeanors because appellant had in fact already served "those terms" consecutively, having served separate periods of prior custody which were credited against the respective jail sentences. We reject this argument. ■ Imposition of time in custody as a condition of probation is an act wholly independent of a later sentencing choice. As respondent observes, the concurrent grants of probation on counts 1, 3, and 4 did not amount to a judgment. (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 [68 Cal.Rptr.2d 870, 946 P.2d 828].) Even if more than one period of custody was imposed as a condition of probation, and even if such periods were imposed and consequently served at successive times, this cannot possibly signify a determination by the trial court that terms on those counts should be served consecutively in the event sentence should later be imposed.

Further undercutting respondent's assertion, custody time during the probationary grant was imposed on counts 1, 3, and 4 concurrently, as respondent concedes. Moreover, there is no indication that, when the trial court imposed judgment in August 1999, it intended that the misdemeanor counts be deemed to have been served consecutively because of the prior history of custody.

Respondent further argues that Penal Code section 669 is inapplicable on its face in the context of this case. The first sentence of Penal Code section 669 mandates the trial court to designate terms as concurrent or consecutive when there is a "second or other subsequent judgment upon which sentence is ordered to be executed." Respondent argues that the trial court did not order the jail sentences to be "executed" within the meaning of that term as used in cases such as *People v. Karaman* (1992) 4 Cal.4th 335, 344 [14 Cal.Rptr.2d 801, 842 P.2d 100], where the court explained "execution of a judgment" as "the process of carrying the judgment into effect." Respondent asserts that this is so because appellant received sufficient credit to cancel out the misdemeanor terms.

We reject this argument as well. In imposing the sentences on misdemeanor counts 3 and 4, the trial court, in effect, ordered them to be executed, then awarded credit against those terms. In each case, the credits happened to equal the length of the term, and therefore the terms were deemed to have been served. (Pen. Code, § 2900.5, subd. (a).) However, this does not alter the fact that the sentences were ordered executed. To hold otherwise would be to unfairly distinguish between two defendants sentenced to identical terms, one whose presentence credits did not equal the length of the term imposed and one whose presentence credits equalled or exceeded the length of the term imposed. When the Legislature added the phrase "upon which sentence is ordered to be executed" to Penal Code section 669 in 1978, it could not have intended this distinction to govern whether Penal Code section 669 would apply.

An inquiry into the legislative intent behind the addition of the phrase "upon which sentence is ordered to be executed" to the first sentence of Penal Code section 669 sheds no light on the reason for this amendment. (*People v. Gray* (1986) 176 Cal.App.3d 520, 523 [222 Cal.Rptr. 29].) We assume, however, that it was to rectify the "anom[a]lous distinction between persons who were given probation by proceedings suspended before sentence, and persons given probation after sentence with execution suspended," which occurred under the statute as it read before the amendment.

(*People v. Carter* (1977) 75 Cal.App.3d 865, 872 [142 Cal.Rptr. 517].)[7] We do not believe that by adding the phrase in question the Legislature intended to create another "anom[a]lous distinction."

Respondent also argues that Penal Code section 669 is inapplicable because that section refers to the determination of how a subsequent judgment shall run with reference to "prior incompleted term or terms" of imprisonment, and there were no such terms here because the prior terms were in fact completed. As appellant points out, this portion of Penal Code section 669 on which respondent relies, which commences with the words "In any event" and contains the language "prior incompleted term or terms," is inapplicable to his case. It applies only to the situation involving deferred sentencing where there is a prior existing judgment in a conviction suffered *before the present proceeding*. (*In re Calhoun* (1976) 17 Cal.3d 75, 80-81 [130 Cal.Rptr. 139, 549 P.2d 1235].) The court in *Calhoun*, considering the validity of deferred sentencing within the 60-day period as provided in that first sentence of the second paragraph of Penal Code section 669, concluded "that the Legislature did not authorize a subsequent sentencing determination when the only 'prior' consists of another conviction in the same case." (17 Cal.3d at p. 81.) Thus, this portion of the statutory scheme, which includes reference to prior incompleted terms, does not apply in this case.

As indicated, as a remedy for a trial court's failure to designate whether counts are to be served consecutively or concurrently, Penal Code section 669 sets forth the following: "Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently." In accordance with this statute, in view of the absence of a designation by the trial court, the misdemeanor counts are deemed to run concurrently with each other. On remand, the trial court will award 270 additional days of presentence credits accordingly.

## V. *Reasons for the trial court's sentence choices*

In a series of related contentions, appellant claims that the trial court erred in stating reasons for its choice of prison and of the upper term. He argues

---

[7]In *People v. Gray, supra,* 176 Cal.App.3d 520, the court explained, "The plain meaning of the amended statute requires that in both the first and second or subsequent proceedings the court must have sentenced the defendant and ordered that sentence be executed. As we have seen, prior to the 1978 amendment of section 669 that was not true. If the first court suspended imposition of sentence and granted probation, the second court could not order a consecutive sentence. However, if the first court imposed sentence, stayed the execution and put the defendant on probation, the second court could impose a consecutive sentence. Courts reluctantly followed this rule." (*Id.* at pp. 523-524.)

that the trial court failed to state reasons for sentencing him to prison; that the trial court improperly relied on circumstances occurring after the November 6, 1996, grant of probation to impose the upper term; that the trial court relied on incorrect facts and made an impermissible dual use of facts in choosing the upper term; that the trial court improperly found aggravating factors stemming from his addiction; that the trial court failed to consider his addiction and his voluntary entry into a rehabilitation program as factors in mitigation; and that the trial court failed to state reasons for imposing the misdemeanor sentences consecutive to each other and for imposing the felony sentence consecutive to the misdemeanor terms.

### A. *Waiver*

Preliminarily, we address appellant's contention regarding waiver. Appellant contends that his sentencing issues were preserved for appeal under *People v. Scott, supra,* 9 Cal.4th 331, because the trial court did not give an indicated sentence, the trial court cut off defense counsel from making any objection, and the court did not thereafter ask counsel if he wished to be heard. ▮ *Scott* holds that particular types of issues, including a trial court's statement of reasons for discretionary sentence choices, are waived where there is no objection so long as the defendant had "a meaningful opportunity to object." (*Id.* at pp. 353, 356.) We agree with the court in *People v. Zuniga* (1996) 46 Cal.App.4th 81, 84 [53 Cal.Rptr.2d 557], that an indicated sentence is not required and that a defendant has a meaningful opportunity to object where, as here, he has notice and an opportunity to be heard.

As appellant points out, after the trial court imposed judgment and before it announced the restitution fine, it stated, "I'm not finished yet." Nevertheless, this statement by the trial court did not in any way deny defense counsel a meaningful opportunity to object to any aspect of the sentencing. We note that at the point where the trial court denied probation and began to impose judgment, defense counsel interrupted the court, stating, "Your Honor, before you start may I just address a couple of issues?" The trial court replied, "Sure, go ahead." It is thus clear that defense counsel was willing and able to interrupt the court and that the court was willing to entertain counsel's arguments, even where they were presented by means of interruption. We conclude that, to the extent there were no objections to the trial court's reasons, these claims are waived.

In any event, appellant's claims lack merit.

### B. *Reasons for rejecting probation and imposing a prison term*

■ In compliance with the requirements of California Rules of Court, rule 406(b)(2),[8] which requires a statement of reasons for denying probation and imposing a prison term, the trial court gave a lengthy statement of reasons for its denial of probation and imposition of a prison term, finding that appellant had not manifested a commitment to obeying the terms and conditions of his probation and that the safety of appellant and of the public required his incarceration. This statement of reasons clearly supported this particular sentence choice. (See *People v. Powell* (1980) 101 Cal.App.3d 513, 518-519 [161 Cal.Rptr. 803].) We will uphold a trial court's sentencing determination where it is supported by substantial evidence. (*People v. Oseguera* (1993) 20 Cal.App.4th 290, 294 [24 Cal.Rptr.2d 534].) The factors cited by the trial court here are supported by the record and amply justify the sentence choice. The trial court could well conclude, based on appellant's having driven while under the influence of controlled substances and while in possession of additional controlled substances and a weapon, and based on his violation of probation by continuing to ingest controlled substances, that he was not committed to giving up the use of drugs and that he constituted a danger to himself and to the public.[9]

### C. *Reliance on factors occurring prior to the reinstatement of probation*

The trial court expressly stated it was considering only appellant's conduct prior to the initial grant of probation and prior to the reinstatement of probation in December 1997, relying on *People v. Harris* (1990) 226 Cal.App.3d 141 [276 Cal.Rptr. 41] (*Harris*). *Harris* permits consideration of a defendant's performance on probation prior to a reinstatement of probation. (*Id.* at pp. 145-146.) Even were we to conclude, as appellant urges, that *Harris* should not be followed,[10] we would not apply such holding to appellant's case because the trial court followed existing law. (See *People v. Scott, supra,* 9 Cal.4th at pp. 357-358.) In any event, we would find any error in the trial court's reliance on the conduct between the original grant of probation and the reinstatement of probation to be harmless, as it is not reasonably probable that a more favorable result would occur absent consideration of this circumstance. (*People v. Osband* (1996) 13 Cal.4th 622, 732 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *People v. Scott, supra,* at p. 355.)

---

[8]All further references to rules are to the California Rules of Court.

[9]Appellant does not state which factor used to support the upper term constitutes an alleged improper dual use of facts.

[10]Appellant asserts that *Harris* ignored the clear language of rule 435(b)(1) and that the language in rule 435(a) on which it relied has since been eliminated.

## D. *Reliance on incorrect facts and dual use of facts*

The trial court's misstatement that the weapon was in the glove box at the time of appellant's first offenses is harmless. Whether it was in the glove box or under the seat, it was still within easy reach of appellant, which was the point underlying the trial court's conclusion that appellant's conduct constituted a threat of harm. The later statement that appellant had a "loaded" weapon—rather than a "concealed" weapon—was in the context of a summary of the charges for which appellant was on bail when he committed a subsequent offense and is also harmless, given the court's recognition that the weapon was not loaded in its discussion of the import of the actual offenses.[11]

The trial court's mention of count 2, possession of heroin, which was dismissed, was not improper under *People v. Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]. The court was relying on the fact that appellant was granted bail or release on his own recognizance for the first four enumerated offenses, including the one charged as count 2, and that he then committed another offense while so released. (See *People v. Combs* (1986) 184 Cal.App.3d 508, 511 [229 Cal.Rptr. 113].) Similarly, the mention of the misdemeanor offenses in the trial court's enumeration of the crimes for which appellant was on bail was not an improper dual use of facts.

## E. *Factors relating to appellant's addiction*

Contrary to appellant's assertion, the trial court did not improperly rely on his addiction as an aggravating circumstance. The court relied on the circumstance that he created a threat of harm to himself and others by speeding while driving under the influence, with additional drugs and a weapon in his vehicle, which was indeed callous. While the amount of each drug[12] may not have been significant, the amount and variety of drugs possessed by appellant for his potential personal use at the time certainly were. The statement that appellant had failed to perform satisfactorily on probation was justified, given appellant's use of alcohol and controlled substances and his failure to complete the required drug testing over a period of four or five days while on probation after his release from the rehabilitation program. Moreover, any erroneous reference to circumstances occurring after the initial grant of

[11]In discussing this statement during the motion for bail pending appeal, the trial court stated that whether the gun had been loaded or unloaded would not have affected its sentencing choice.

[12]A police report and laboratory analysis contained as an exhibit offered in support of appellant's motion for bail pending appeal indicate that appellant possessed 1.17 grams of a powdered substance containing cocaine, .32 grams of a solid substance containing cocaine base, .42 grams of a substance containing heroin, and a Valium pill.

probation was harmless (see discussion above), as was the reference to rule 421(a)(9) rather than rule 421(a)(1). Finally, as indicated above, the trial court's reference to count 5, being under the influence of a controlled substance, in the court's statement that appellant was on bail or on his own recognizance when he committed this offense did not constitute an improper reliance upon his addiction, the point being that he committed this offense while released on bail.

### F. *Mitigating factors*

■ The trial court did not err in failing to consider as mitigating factors appellant's addiction and its possible biological basis and the fact that he had voluntarily entered a drug rehabilitation facility. The trial court was not required to state reasons for rejecting a factor in mitigation. (*People v. Reid* (1982) 133 Cal.App.3d 354, 371 [184 Cal.Rptr. 186].) The court stated, however, that despite having participated in numerous rehabilitation programs, appellant had not made a commitment to overcoming his drug problem. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 [84 Cal.Rptr.2d 638]; *People v. Reid, supra,* at p. 371.)

### G. *Reasons for consecutive sentencing*

As previously indicated, the matter will be remanded to permit the trial court to decide whether the misdemeanor counts are to run consecutively with the felony count.[13] ■ Since the determinate sentencing law and its requirement that reasons be stated apply only to felony sentencing, no statement of reasons is required when a misdemeanor is ordered to run consecutively to a felony. (*People v. Fugate, supra,* 219 Cal.App.3d at pp. 1411-1413.) It would exalt form over substance to hold that reasons are required merely because a trial court pronounces judgment in the opposite order, that is, when a felony is ordered to run consecutively to a misdemeanor. The Advisory Committee comment to rule 403 concerning the applicability of sentencing rules for superior courts states that "[t]he operative portions of section 1170 deal exclusively with prison sentences; and the mandate to the Judicial Council in section 1170.3 is limited to criteria affecting the length of prison sentences and the grant or denial of probation. Criteria dealing with jail sentences . . . would substantially exceed the mandate of the legislation." (Advisory Com. com., 23 pt. 1 West's Ann. Court Rules (1996 ed.) foll. rule 403, p. 742.) *People v. Murray* (1994) 23 Cal.App.4th 1783 [29 Cal.Rptr.2d 42], as well as those portions of Penal

---

[13]We have determined that the misdemeanor counts are concurrent, and we therefore do not address appellant's contention regarding the necessity of a statement of reasons for consecutive misdemeanor counts.

Code sections 1170 and 1170.1 on which appellant relies, lend no support to his argument.

## VI. *The award of credits*

Appellant contends that, since the misdemeanor sentences must be deemed to be concurrent with each other, the excess credits which were applied to those counts must be applied to the felony count.[14] He further contends that the trial court neglected to award him the 60 days previously awarded against the 240-day jail term imposed as a condition of probation on December 8, 1997.

Respondent counters that the record is ambiguous (1) as to *what* 60-day period the trial court granted credit for on the jail term because the record reflects only a 52-day period, not a 60-day period, between October 17, 1997, and December 8, 1997, and (2) as to whether this 52-day period was included in the 120-day program completed after probation was reinstated, for which appellant received credit at sentencing. Respondent also argues that the trial court erroneously awarded appellant credit (1) for 45 days in the Impact program, when the record reflects only 44 days between the June 22, 1999 commitment and the August 5, 1999 sentencing, and (2) for 23 days of conduct credit for the time spent in the Impact program.

Appellant is entitled to credit, properly calculated, for the time served between October 17, 1997, and December 8, 1997. Each day of custody, including the first day and the date of sentencing, is counted. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735 [268 Cal.Rptr. 486].) Thus, as appellant acknowledges, the actual number of days served between October 17 and December 8 for which he is entitled to credit is 53, not 60. The record indicates that appellant served 120 days in a residential treatment facility after completion of his county jail term, and no ambiguity appears which might suggest that the period of 53 days should be attributed to that custody.[15] Under *People v. Bravo*, the 45-day total for the time served in the Impact program is correct.

While a defendant is not entitled to conduct credits for time served as a condition of probation in a residential drug rehabilitation program (*People v. Palazuelos* (1986) 180 Cal.App.3d 962, 964-965 [226 Cal.Rptr. 31]), the

---

[14]We have discussed this claim above. (See pt. IV., *ante.*) Since we have determined that the misdemeanor counts are deemed to be concurrent, we do not address appellant's alternate argument concerning the application of credits to consecutive misdemeanor terms.

[15]If respondent believes that the 120-day period was not served in its entirety, such factual issue may be brought before the trial court on remand.

record clearly reflects that on June 22, 1999, pending sentencing, appellant was remanded to the custody of the Los Angeles County Sheriff for housing in the Impact program, which was a custodial program. He is therefore entitled to presentence conduct credits pursuant to Penal Code section 4019, subdivision (a) for that period of time.

On remand, after determining whether the sentence on the felony is to run concurrently or consecutively with the misdemeanor sentences, the trial court will award the appropriate credits, including the 53 days discussed above and those attributable to the concurrent misdemeanor terms.

VII. *The restitution fine and the parole revocation fine*

When the trial court placed appellant on probation in November 1996, it imposed a restitution fine of $200. When the trial court sentenced appellant to prison in August 1999 following revocation of probation, it imposed a restitution fine of $600 and a suspended parole revocation fine of $600. Appellant contends, and respondent concedes, that the $600 fines were improperly imposed and that each must be reduced to $200. (*People v. Chambers* (1998) 65 Cal.App.4th 819, 820-821 [76 Cal.Rptr.2d 732].)

VIII. *Bail pending appeal*

In a recent motion for his immediate release from custody, either on bail or on his own recognizance, appellant has provided us with a July 27, 2000 letter from the Department of Corrections verifying his actual custody and time credits (as of July 13, 2000) to be 885 days against a 1,095-day (365 days times three years) sentence, leaving a shortfall of 210 days. However, in this opinion we have held appellant is owed 323 additional days of credit (180 + 90 + 53 = 323). When those additional time credits are added in, it is obvious appellant has more than served his sentence. Concurrently with this opinion, we have therefore granted appellant's motion for bail pending finality of this appeal.

DISPOSITION

The matter is remanded in accordance with the views expressed herein for a determination as to whether the sentence on the felony count is to run consecutively or concurrently with the sentences on the misdemeanor counts and for a determination as to the award of applicable credits. The judgment is modified to strike the $600 restitution fine and the suspended $600 parole

revocation fine and to reflect a $200 restitution fine and a $200 suspended parole revocation fine. In all other respects, the judgment is affirmed.

Boren, P. J., and Cooper, J., concurred.

A petition for a rehearing was denied August 21, 2000, and respondent's petition for review by the Supreme Court was denied November 21, 2000.