Filed 4/23/21  P. v. Ayala CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C090819 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF 19-2264) |
| v. | |
| CARLOS GALLO AYALA, | |
| Defendant and Appellant. | |

In a seven-count information, defendant Carlos Gallo Ayala (defendant) was charged with infliction of corporal injury on a spouse (Pen. Code, § 273.5, subd. (a); count 1),[1] false imprisonment by force (§§ 236, 237, subd. (a); count 2), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 3), second degree robbery (§§ 211, 212.5, subd. (c); count 4), stalking (§ 646.9, subd. (a); count 5),

---

[1]     Undesignated statutory references are to the Penal Code.

1

dissuading a witness (§ 136.1, subd. (b)(1); count 6), and bribery to influence the information given to a law enforcement official (§ 137, subd. (a); count 7). After a jury trial, defendant was found guilty of counts 1, 2, 3, 6, and 7. On count 4, defendant was found guilty of the lesser included offense of misdemeanor theft (§ 484). Defendant was found not guilty on count 5. The court denied defendant's request for probation and sentenced him to a six-year term of imprisonment.

On appeal, defendant argues: (1) the trial court erred in admitting the victim's out-of-court statements under Evidence Code section 1390; (2) the court abused its discretion in denying his request for probation; (3) a remand for resentencing is required because the trial court failed to recognize its discretion to sentence him concurrently on counts 6 and 7; and (4) the matter must be remanded for a hearing on defendant's ability to pay the fines and fees ordered by the court under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We agree only with the third contention that the court failed to recognize its sentencing discretion on counts 6 and 7. Thus, we shall vacate the sentence, remand for resentencing, and otherwise affirm the judgment.

BACKGROUND FACTS AND PROCEDURE

A little after 5:00 a.m. on April 28, 2019, a 911 dispatcher received a call from the victim, O.A. O.A. was distraught, sobbing, and out of breath. O.A. told the dispatcher that defendant, her husband of 20 years, had just beaten her and taken her keys. O.A. said that defendant waited outside her home in the dark and ambushed her. She said defendant punched her repeatedly in the head and face, and covered her nose and mouth, making it difficult for her to breathe. O.A. said she had bruises, cuts, swollen lips, and a bump on her head. She stated that her head hurt "really bad." O.A. told the dispatcher that during the attack she thought she was going to die. The dispatcher asked if defendant had done things like this before, and O.A. said that he had. At one point during the call, O.A. told the dispatcher that defendant was trying to call her and offer her

2

a bribe. She also told the dispatcher that defendant had left a message on her answering machine offering her $1,000 if she did not call law enforcement.

At approximately 6:25 a.m., Deputy Tonya Oropeza arrived at the scene to relieve the officers who initially responded to the 911 call. By the time Oropeza arrived, emergency medical personnel had left and O.A. was lying on a sofa in her home. She was upset, appeared to have been crying, and was having trouble catching her breath. Oropeza observed some bruising and swelling on O.A.'s face and bottom lip. O.A. appeared to have dried blood on the right side of her mouth. O.A.'s left ear had an earring hook with no earring, and O.A. had a large swath of blood behind her ear. O.A. said that she was in pain.

Oropeza asked O.A. about her relationship with defendant. O.A. related that she and defendant had been in a relationship since 2000 and had three children together. They were married, but did not live together. O.A. said that defendant had committed prior acts of domestic violence against her. O.A. stated that she filed for divorce two years earlier, but never followed through.

Oropeza asked O.A. to describe the attack. Consistent with the 911 call, O.A. told Oropeza that at about 5:00 a.m., she walked out to her vehicle to retrieve some items. On her way back to the house, defendant emerged from the shadows and charged at her. He forced her to the ground and straddled her. He held his hand over her nose and mouth so that she was unable to breathe or scream. As she struggled, he punched her in the face and head about 10 times with a closed fist. O.A. described the blows as what would be expected in a fight between two men. Defendant then placed both his hands on her neck, causing her to be unable to breathe. After some time, he got up and walked away. He then returned, took her keys, and left again. O.A. went inside and called the sheriff's department.

After speaking to O.A., Oropeza searched the area where the attack occurred. On the ground, Oropeza found the earrings that O.A. said she was wearing during the attack.

3

One of the earrings was missing a hook. Oropeza also found a small black flashlight and a baggie containing 16.8 grams of methamphetamine (meth). O.A. told Oropeza that the meth and the flashlight did not belong to her and that defendant used meth.

Later that day, defendant was apprehended while driving and arrested. The arresting officer observed that defendant's knuckles were red and swollen. The officer found $1,961 in defendant's wallet. In defendant's vehicle, the officer found a black hooded jacket consistent with one reportedly worn during the attack. The officer also found a blue backpack containing a Leatherman knife, two flashlights, binoculars, and a set of gloves. Inside one of the gloves, the officer found O.A.'s keys.

A search of defendant's cell phone revealed that on the day of the incident, between approximately 8:00 a.m. and 10:45 a.m., defendant made five calls to O.A. using a feature that blocked his number. Defendant also sent O.A. more than 75 text messages between approximately 8:00 a.m. and 11:30 a.m. In the text messages, defendant wrote that he was "sorry," that he would "do anything," repeatedly asked O.A. whether she had called the cops, and asked to meet with her "face to face."[2] In several text messages, defendant offered her $1,000.

On April 29, 2019, while defendant was in custody, Oropeza spoke with O.A. a second time. O.A. reiterated that defendant had committed many prior acts of domestic violence against her. O.A. said that she only reported about 10 percent of the incidents to law enforcement. O.A. told Oropeza that it was not uncommon for defendant to wait outside her home and either confront her or physically assault her. Oropeza helped O.A. secure an emergency temporary protective order.

---

[2] O.A. refused to meet with defendant, stating, "[You] almost killed me," and that she "just want[ed] [her] keys." Defendant initially promised to return the keys and then denied he had them.

On May 7, 2019, in a recorded jail call with his mother, defendant discussed the possibility that the charges would be dropped if O.A. refused to testify. Defendant explained, "[T]hat's why I want to get out mom because . . . if she does not talk or does not say anything Ma, they will drop everything." He continued, "I don't know why you don't try to talk to her to tell her not to say anything. I don't know mom I can't say anything on the phone." His mother responded, "Yes, no no. No not that." Defendant then said, "You understand? But do you understand what happened the last time?"

On May 21, 2019, after defendant was released on bail, Oropeza met with O.A. again to discuss the attack. This time, O.A. refused to cooperate. O.A. told Oropeza that she did not want to talk about the incident and refused to answer any questions. A day or two later, when Oropeza returned to O.A.'s house, defendant was there. O.A. told Oropeza that she did not want to speak with her. O.A. also told Oropeza that she had the protective order changed to allow defendant to be around her.

*The prosecution's case-in-chief*

O.A. refused to provide any testimony at the preliminary hearing or at trial. The trial court therefore found O.A. to be unavailable as a witness and allowed the prosecution to admit out-of-court statements that O.A. made to law enforcement. Through Oropeza and others, the prosecution elicited testimony consistent with the facts described above. The jury heard an audio recording of the 911 call, as well as the recorded jail call between defendant and his mother. The prosecution introduced photographs (1) showing the injuries to O.A.'s face and head, and (2) showing the redness and swelling on defendant's knuckles at the time of his arrest.

The jury also heard testimony from law enforcement officers regarding three prior incidents of uncharged domestic violence involving defendant and O.A. With respect to the first incident, Deputy Myles Torres testified that he responded to a domestic violence call at O.A.'s residence on March 24, 2015. When he arrived, O.A. told him that there had been an argument and defendant punched her multiple times in the head. O.A. told

Torres that defendant had threatened her and been abusive to her in the past. Torres did not see any visible injuries to O.A., but he observed broken skin on one of defendant's knuckles, which he photographed. Torres helped O.A. obtain an emergency temporary protective order.

Deputy Kyle Leonard testified to a second domestic violence call at O.A.'s residence on September 26, 2015. When Leonard arrived, he observed cuts and scratches on O.A.'s hands, arms, and torso. O.A. told Leonard that she caught defendant using meth in the bathroom. When she confronted him, defendant punched her in the stomach. The argument escalated. O.A. stated that at one point defendant put her in a choke hold and she could not breathe and felt like she was going to pass out. She escaped and then ran inside and called 911. Defendant was arrested and taken to jail.

Deputy Erin Forster testified about a third domestic violence call to O.A.'s home on December 29, 2018. When Forster arrived, O.A. related that after confronting defendant about removing items from her vehicle, defendant shoved her. O.A. called 911 because she feared defendant would become more violent. After defendant left, O.A. attempted to cancel the 911 call. Nevertheless, O.A. requested a temporary emergency protective order because she was afraid defendant's behavior would worsen. A few days later, Forster asked O.A. if she wanted another protective order. O.A. declined, stating defendant would "kill her if she did that."

*The defense case*

Defendant testified at trial that in the early morning hours on the day of the incident, he had a phone conversation with his 10-year-old daughter who told him that O.A. had left her and her young sisters alone in the house. Defendant said he went to the house because he was concerned about the children being left with no adult supervision. Defendant claimed that when he arrived at the house, O.A.'s car was not there. He knocked on the door and texted his daughter, but got no response, so he waited outside—possibly for as long as five hours—until O.A. returned.

6

According to defendant, O.A. arrived home around 5:00 a.m. She appeared intoxicated. They argued about the children and, during the argument, O.A. asked him for money. After a while, he left. He did not hurt O.A. and did not know how she was injured. He denied stealing O.A.'s keys. He claimed that she gave him her keys because he had been working on her vehicle. He denied that the meth found by officers at the scene belonged to him.

Defendant admitted that he apologized to O.A. in his texts to her after the incident. He claimed he was apologizing for not being a more supportive husband. He also admitted offering O.A. $1,000 while she was on the phone with 911, and claimed he did so because he owed child support and feared she would lie to the police. Defendant admitted he had been convicted in the past for domestic violence. He further admitted that prior domestic violence charges against him had been dropped when O.A. refused to testify, but he denied putting pressure on her not to testify in this case.

*Verdict and sentencing*

The jury found defendant guilty of infliction of corporal injury on a spouse (count 1), false imprisonment by force (count 2), assault by means of force likely to cause great bodily injury (count 3), dissuading a witness (count 6), and giving a bribe to influence information given to a law enforcement official (count 7). The jury found defendant not guilty of stalking (count 5). On count 4, robbery, the jury found defendant guilty of the lesser included misdemeanor offense of petty theft under section 484.

The court sentenced defendant to the upper term of four years on count 1, and upper terms of three years and four years on counts 2 and 3, respectively, to run concurrent to count 1. On count 6, the court imposed a consecutive term of two years (the full midterm). On count 7, the court imposed a term of eight months (one-third the midterm), to run consecutive to count 1, but concurrent to count 6. On count 4, the misdemeanor, the court imposed a six-month sentence, to run concurrent to count 1. The total term of imprisonment was six years.

Defendant timely appealed the court's judgment.

DISCUSSION

I

*Admission of the Victim's Out-of-Court Statements*

Defendant contends the trial court erred in admitting the victim's out-of-court statements to Deputy Oropeza under Evidence Code section 1390.[3] We find no error.

Assessing the admissibility of out-of-court statements involves a two-part analysis. (*People v. Sanchez* (2016) 63 Cal.4th 665, 680 (*Sanchez*).) First, we must decide whether the statement is hearsay and if a hearsay exception applies. (Evid. Code, § 1200; *People v. Alvarez* (1996) 14 Cal.4th 155, 185.) Second, if a hearsay statement is otherwise admissible under a hearsay exception, we must determine whether admissibility is limited by the Sixth Amendment's confrontation clause. (*Sanchez, supra*, at p. 680.)

As interpreted by the United States Supreme Court in *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177] and its progeny, the confrontation clause generally bars admission of "testimonial" hearsay statements against a defendant unless the declarant is unavailable to testify and the defendant had a previous opportunity to cross-examine the witness. (*Crawford, supra*, at pp. 53-54, 59, 68; *Sanchez, supra*, 63 Cal.4th at pp. 680, 687.) However, there is a recognized exception to the confrontation clause if a witness's absence is procured through the defendant's own wrongdoing. (*Crawford*, at p. 62.) This exception, commonly known as "forfeiture by wrongdoing," has its foundation in the equitable maxim that "no one shall be permitted to take advantage of his own wrong." (*Reynolds v. United States* (1879) 98 U.S. 145, 159 [25 L.Ed. 244, 248].)

---

[3] Although defendant's opening brief only challenges the court's ruling as to O.A.'s out-of-court statements to Oropeza, our ruling is equally applicable to all of O.A.'s out-of-court statements.

The United States Supreme Court has explained the theory behind the forfeiture-by-wrongdoing doctrine in the following manner: "[W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system." (*Davis v. Washington* (2006) 547 U.S. 813, 833 [165 L.Ed.2d 224, 244].) The forfeiture-by-wrongdoing doctrine is "grounded in 'the ability of courts to protect the integrity of their proceedings' " by " 'removing the otherwise powerful incentive for defendants to intimidate, bribe, [or] kill the witnesses against them . . . .' " (*Giles v. California* (2008) 554 U.S. 353, 374 [171 L.Ed.2d 488, 504] (*Giles*).)

For the forfeiture-by-wrongdoing exception to apply, a defendant must have (1) caused a witness to be unavailable by (2) wrongful conduct intended to cause the witness to be unavailable.[4] (*Giles, supra*, 554 U.S. at p. 367; *People v. Merchant* (2019) 40 Cal.App.5th 1179, 1185 (*Merchant*); *Kerley, supra*, 23 Cal.App.5th at p. 550.) The exception applies "not only when the defendant intends to prevent a witness from testifying in court but also when the defendant's efforts were designed to dissuade the witness from cooperating with the police or other law enforcement authorities." (*Banos, supra*, 178 Cal.App.4th at p. 501; see *Giles*, at p. 377.)

In California, the forfeiture-by-wrongdoing doctrine is codified at section 1390 of the Evidence Code as an exception to the hearsay rule. That statute provides: "Evidence

---

[4] Nothing requires that the intent to procure the witness's unavailability must have been the defendant's *sole* intent. (*People v. Banos* (2009) 178 Cal.App.4th 483, 504 (*Banos*); *People v. Kerley* (2018) 23 Cal.App.5th 513, 550, 558 (*Kerley*).) The exception applies if "at least one" of the defendant's reasons for committing the wrongdoing was to make the declarant unavailable as a witness. (*People v. Quintanilla* (2020) 45 Cal.App.5th 1039, 1049, italics omitted.)

of a statement is not made inadmissible by the hearsay rule if the statement is offered against a party that has engaged, or aided and abetted, in the wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." (Evid. Code, § 1390, subd. (a).) A party seeking to introduce a hearsay statement under this exception must establish that the elements have been met by a preponderance of the evidence at a foundational hearing. (§ 1390, subd. (b).) The hearsay evidence at issue is admissible at the foundational hearing, but it cannot be the sole basis for the court's finding that the prerequisites of the statute have been met; there must be independent corroborative evidence. (§ 1390, subd. (b)(2); *Kerley, supra*, 23 Cal.App.5th at p. 550.)

In general, we review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People v. Quintanilla, supra*, 45 Cal.App.5th at pp. 1049-1050.) But where the issue is whether the trial court erred in finding that the factual predicates for application of section 1390 were met, the substantial evidence test applies. (*Id*. at p. 1050.)

Here, after a foundational hearing, the trial court ruled that the People met their burden to show that O.A.'s out-of-court statements were admissible under section 1390. The court relied upon: (1) defendant's history of domestic violence involving O.A.; (2) O.A.'s history of reporting domestic violence and then refusing to testify against defendant; (3) defendant's attempt to bribe O.A. not to report the April 28 incident; (4) defendant's recorded jail call with his mother; and (5) the fact that O.A., after initially cooperating with law enforcement, stopped cooperating shortly after defendant was released on bail. Like the trial court, we conclude that this evidence is sufficient to support a reasonable inference that defendant engaged in wrongdoing that was intended to, and did, procure the unavailability of O.A. as a witness.

Although there is no evidence that defendant expressly threatened O.A. with harm if she testified against him, such evidence is not required. In *Merchant*, the Fourth Appellate District upheld application of the forfeiture-by-wrongdoing doctrine in a case

10

involving nonthreatening conduct. (*Merchant, supra*, 40 Cal.App.5th at p. 1184.) The court relied on a series of jail calls by the defendant exhorting the victim not to testify, combined with a history of domestic abuse, to conclude there was sufficient evidence to find the defendant intentionally procured the victim's unavailability at trial. (*Id.* at pp. 1184, 1186; accord, *People v. Reneaux* (2020) 50 Cal.App.5th 852, 860-862, 865-868, 870; *United States v. Mastrangelo* (2d Cir. 1982) 693 F.2d 269, 272-273; *Reynolds v. United States, supra*, 98 U.S. 145; see also *Banos, supra*, 178 Cal.App.4th at p. 501 [noting the United States Supreme Court has stated in broad terms the type of act that will trigger the exception].)

The evidence of intent is stronger here than in *Merchant*. Defendant did not merely implore the victim not to testify; he explicitly tried to bribe her not to cooperate with law enforcement, the type of conduct specifically found to fall within the scope of the forfeiture-by-wrongdoing exception. (See *Giles, supra*, 554 U.S. at p. 361.) Then, during a recorded jail call with his mother, defendant discussed the possibility that the charges would be dropped if O.A. refused to testify, and specifically stated, "[T]hat's why I want to get out mom because if she does not talk . . . if she does not talk or does not say anything Ma, they will drop everything." Defendant specifically alluded to "what happened the last time," and told his mother that he could not say anything more on the phone.

In the context of their historically abusive relationship, this is strong evidence that defendant intended to use his influence and control over O.A. to pressure her not to testify against him. (*Giles, supra*, 554 U.S. at p. 377 [noting that "[a]cts of domestic violence often are intended to dissuade a victim from resorting to outside help . . . ."]; see also *id.* at p. 380 (conc. opn. of Souter, J.) [stating the required intent "would normally be satisfied by the intent inferred on the part of the domestic abuser in [a] classic abusive relationship"]; accord, *Davis v. Washington, supra*, 547 U.S. at pp. 832-833 [domestic violence offenses are notoriously susceptible to intimidation or coercion of the victim].)

11

And the timing of when O.A. stopped cooperating with law enforcement supports a reasonable inference that this is precisely what happened.  Other evidence at trial further supports this inference, including defendant's panicked texts asking O.A. whether she reported the incident to law enforcement, defendant pleading to meet with O.A. in person to discuss the incident, and O.A.'s prior statement to law enforcement that defendant would "kill her" if she asked for another protective order.[5]

Defendant argues that the evidence of causation is circumstantial.  Defendant is correct, but his argument is unpersuasive.  " ' "[S]ubstantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." ' " (*People v. Lucero* (2019) 41 Cal.App.5th 370, 413.)  Our task on appeal is not to decide whether the trial court's decision is the only reasonable outcome; it is to decide whether, viewing the facts in the light most favorable to the decision, a rational decision maker could find as the trial court did.  (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)  Applying this standard, we conclude that a rational decision maker could find that defendant intended to cause, and caused, O.A.'s unavailability as a witness.  Thus, the trial court did not err in admitting O.A.'s out-of-court statements under Evidence Code section 1390.[6]

---

**5**    While much of the evidence was based on O.A.'s hearsay statements, the independent corroboration requirement was met by Deputy Oropeza's percipient witness testimony, the texts recovered from defendant's phone, and the recorded jail call.

**6**    Because we conclude the trial court did not err in admitting O.A.'s hearsay statements under Evidence Code section 1390, it is unnecessary for us to consider whether the statements were nontestimonial statements that could be admitted under a different hearsay exception.

II

*Denial of Probation*

A probation report prepared before sentencing found defendant to be a "marginal candidate for probation" and made a "guarded recommendation" that probation be granted. The People opposed the recommendation, emphasizing defendant's criminal history, the fact that he was on probation at the time of the current offenses, and that he exhibited no remorse for attacking O.A. Defense counsel countered that it had been about seven years since defendant's last felony conviction, that defendant was taking steps to overcome his addiction and anger issues, and that granting probation would allow defendant to keep his job and provide financial support for his children. After considering the probation report, defendant's statement, and the arguments of the parties, the trial court denied defendant's request for probation.

On appeal, defendant contends the trial court abused its discretion in denying probation. We disagree.

Here, because defendant had a history of 10 prior felony convictions, he was statutorily ineligible for probation absent an "unusual case" finding. (§ 1203, subd. (e)(4).) It is only after a defendant establishes that his or her case is unusual that the court will consider whether to grant probation using the criteria in California Rules of Court, rule 4.414 (further rules references are to the California Rules of Court). (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 830; *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229.)

In determining whether a case is "unusual," courts apply the criteria listed in rule 4.413(c).[7] (Rule 4.413(b).) Rule 4.413 lists factors which "may" indicate the existence

_____

[7]     Rule 4.413(c) provides: "The following factors may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate: [¶] (1) Factors relating to basis for limitation on probation[:] A factor or circumstance indicating that

13

of an unusual case. As the term "may" suggests, the provision is permissive, not mandatory. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178 (*Stuart*).) The trial court is not required to find a case unusual even when the relevant criteria are met. (*People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1587.) Further, courts must construe the exception for "unusual cases" narrowly to ensure the statutory limitations on probation have meaning. (*People v. Superior Court (Dorsey), supra*, 50 Cal.App.4th at p. 1229.) Unusual cases must be limited to "those matters in which the crime is either atypical or the offender's moral blameworthiness is reduced." (*Ibid*.; accord, *Stuart, supra*, at p. 178.)

We review a trial court's finding as to whether a case is unusual for abuse of discretion. (*People v. Superior Court (Du), supra*, 5 Cal.App.4th at p. 831.) The defendant bears a heavy burden to meet this standard. (*People v. Aubrey* (1998)

---

the basis for the statutory limitation on probation, although technically present, is not fully applicable to the case, including: [¶] (A) The factor or circumstance giving rise to the limitation on probation is, in this case, substantially less serious than the circumstances typically present in other cases involving the same probation limitation, and the defendant has no recent record of committing similar crimes or crimes of violence; and [¶] (B) The current offense is less serious than a prior felony conviction that is the cause of the limitation on probation, and the defendant has been free from incarceration and serious violation of the law for a substantial time before the current offense. [¶] (2) Factors limiting defendant's culpability[:] A factor or circumstance not amounting to a defense, but reducing the defendant's culpability for the offense, including: [¶] (A) The defendant participated in the crime under circumstances of great provocation, coercion, or duress not amounting to a defense, and the defendant has no recent record of committing crimes of violence; [¶] (B) The crime was committed because of a mental condition not amounting to a defense, and there is a high likelihood that the defendant would respond favorably to mental health care and treatment that would be required as a condition of probation; and [¶] (C) The defendant is youthful or aged, and has no significant record of prior criminal offenses. [¶] (3) Results of risk/needs assessment[:] Along with all other relevant information in the case, the court may consider the results of a risk/needs assessment of the defendant, if one was performed. The weight of a risk/needs assessment is for the judge to consider in its sentencing discretion.

65 Cal.App.4th 279, 282.) The trial judge's discretion in determining whether to grant or deny probation is broad and will not be disturbed on appeal unless its decision is so irrational or arbitrary that no reasonable person could agree with it. (*Stuart, supra*, 156 Cal.App.4th at pp. 178-179; accord, *People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

Here, the trial court considered the factors related to the statutory limitation on probation and concluded that this was not an unusual case warranting probation. The trial court emphasized the nature and severity of defendant's attack on O.A., the absence of provocation, defendant's age, his history of domestic violence and lengthy criminal record, as well as his prior performance on probation and current probationary status. Balancing these factors against the mitigating evidence, such as defendant's work history and expressed willingness to comply with probation, the court concluded that defendant failed to meet his burden to show that his was an unusual case in which the interests of justice would be best served by a grant of probation.

Without disputing his presumptive ineligibility, defendant contends the trial court abused its discretion because the facts in favor of finding an unusual case "outweighed those against such a finding." In particular, defendant claims the court abused its discretion because it gave insufficient weight to the evidence that (1) defendant's last felony conviction occurred more than seven years earlier, (2) some of defendant's prior felony convictions are potentially eligible for reduction under Proposition 47 (passed by voters on Nov. 4, 2014), and (3) defendant was actively participating in a program to help him conquer his drug and anger issues.[8]

---

[8]    Defendant also claims that there is no evidence to support the court's finding that defendant choked the victim. Not so. The evidence supports a reasonable inference that defendant attempted to suffocate O.A. by placing his hands on her nose and mouth, and choked her by placing his hands around her neck, both of which caused her to be unable to breathe.

We find no abuse of discretion. The trial court considered the mitigating evidence and found it was not sufficient, under all the circumstances, to overcome the presumption of ineligibility. The trial court had a reasonable basis for its ruling. Defendant is essentially asking us to reweigh the evidence and reach a different conclusion, which is something we cannot do. (See *Stuart, supra*, 156 Cal.App.4th at pp. 178-179.) The trial court was well within its discretion in denying defendant's request for probation.

### III

*Consecutive Sentences for Counts 6 and 7*

Defendant contends that the sentences imposed on counts 6 and 7 must be reversed and remanded because the trial court failed to recognize it had discretion to sentence those counts concurrently to the principal term. We find merit in this claim.

As a preliminary matter, we reject the People's assertion that defendant forfeited this issue by failing to object. Although the general rule is that only claims properly raised and preserved by the parties are reviewable on appeal (*People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Boyce* (2014) 59 Cal.4th 672, 730), an exception to this rule exists where a trial court has failed to exercise its discretion based on an erroneous understanding of the law. (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023 (*Leon*); *People v. Downey* (2000) 82 Cal.App.4th 899, 912 (*Downey*).) " 'Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]' [Citation.] Where . . . a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination. [Citations.]" (*Downey, supra*, at p. 912.) "Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion. [Citation.]" (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

16

Here, defendant is not challenging a discretionary sentencing decision. Rather, his claim is that the trial court failed to exercise its discretion based on a mistaken belief that consecutive sentences were mandatory. Defendant's claim falls within the narrow class of sentencing issues that are reviewable even in the absence of a timely objection.[9]

Turning to the merits, relief from a misunderstanding of sentencing discretion is available on appeal only when the error is affirmatively demonstrated by the record. (*Leon, supra*, 243 Cal.App.4th at p. 1026.) Absent affirmative evidence that the court was unaware of its discretion, we must presume the court was aware of its discretion and properly exercised it. (Evid. Code, § 664; *People v. Jacobo* (1991) 230 Cal.App.3d 1416, 1430; *People v. Alvarez* (1996) 49 Cal.App.4th 679, 694.)

The People argue there is no affirmative evidence that the trial court misunderstood the scope of its sentencing discretion. We disagree. Although it is true the trial court never expressly stated that it lacked discretion to sentence counts 6 and 7 concurrent to the principal term, the court also showed no awareness that it had such discretion. Further, both parties appeared to assume that section 1170.15 required the dissuasion counts to be sentenced consecutively.

At the sentencing hearing, the prosecutor stated, "I also gave the Court the Penal Code [section] 1170.5 [*sic*], I believe, that . . . the 136.1 shall run full term, midterm consecutive to the assault. So that would be two years consecutive to the . . . principal term." As to count 7, the prosecutor stated, "I do also think that the 137 should run concurrent with the 136," but "consecutive to the principal [term] . . . ." Defense counsel responded, "I understand the argument of 136.1(b), to be midterm consecutive. However, it would be our request [defendant] be sentenced to . . . 2 years and 8 months today. But if that is not possible, it's our request that we impose the low term of two

---

[9]    We also may exercise our discretion to resolve the issue to forestall an ineffective assistance of counsel claim. (*Leon, supra*, 243 Cal.App.4th at p. 1023.)

years on Count 1, . . . and then imposing the additional two years on the 136.1 for a total of four if the Court is going to sentence [defendant] to prison." When discussing the term for count 7, defense counsel stated, "*I'm looking at 1170.15. I think [the prosecutor] is correct that [the term for count 7] would have to be consecutive to the principal counts*, but it could be concurrent to Count 6 . . . ." (Italics added.) Thus, while the parties discussed whether count 7 could be sentenced concurrently to count 6, it appears that both parties assumed counts 6 and 7 had to be sentenced consecutively to the principal term (count 1).

The trial court ultimately sentenced defendant to (1) the full middle term of two years, consecutive to the principal term, on count 6, and (2) one-third the midterm (eight months), concurrent to count 6, but consecutive to the principal term (count 1) on count 7. The court did not state any reasons for imposing either sentence consecutively. (See § 1170, subd. (c); Rule 4.406(b)(5).) Based on the evidence, it is reasonable to infer that the court was led to believe, incorrectly, that it had no discretion under section 1170.15 to sentence the dissuasion counts concurrently. (*In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181-1182.)

Section 1170.15 is an exception to the basic sentencing scheme set forth in section 1170.1, subdivision (a). As relevant here, section 1170.15 provides: "Notwithstanding subdivision (a) of Section 1170.1[,] which provides for the imposition of a subordinate term for a consecutive offense of one-third of the middle term of imprisonment," if a person is convicted of a felony and also convicted of an additional felony involving a violation of section 136.1 or 137 committed against a victim or witness to the first felony (e.g., dissuading or bribing a witness), then the subordinate term for "each consecutive offense . . . described in this section shall consist of the full middle term of imprisonment . . . for which a consecutive term of imprisonment is imposed . . . ." (§ 1170.15; *People v. Evans* (2001) 92 Cal.App.4th 664, 669; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1835.)

Although not a model of clarity, the plain language of the statute does not mandate consecutive sentences. (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479.) The trial court retains its discretion under section 669 to impose concurrent or consecutive sentences for violations of section 136.1 or 137. (*Woodworth, supra*, at p. 1479.) If the court chooses a consecutive sentence, section 1170.15 merely requires the court to impose the full middle term of imprisonment. (*Woodworth*, at p. 1479.)

Here, in contrast, the parties and the trial court understood section 1170.15 to require the imposition of a full consecutive midterm sentence for the section 136.1 conviction, and a consecutive sentence for the violation of section 137. As a result, the trial court failed to exercise the discretion vested in it by law to determine whether those sentences should be consecutive or concurrent.[10] (*Downey, supra*, 82 Cal.App.4th at p. 912.)

Generally, when the record shows the trial court proceeded with sentencing based on the erroneous assumption that it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its discretion. (*People v. Brown, supra*, 147 Cal.App.4th at p. 1228; *Downey, supra*, 82 Cal.App.4th at p. 912; *People v. Deloza* (1998) 18 Cal.4th 585, 600; *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421.) The People argue that even if the court misunderstood its discretion, remand is not required because the court's decision to deny probation and impose the upper term for count 1 show it would not have sentenced counts 6 and 7 concurrently. We are not persuaded. This is not a situation where the court imposed the maximum sentence possible or made statements clearly indicating it would not exercise any leniency in sentencing the

---

**10**　In any event, the sentence imposed on count 7 is unauthorized. Under section 1170.15, when a violation of section 137 is sentenced consecutively to the "first felony," the court must impose the full midterm sentence, which, for a violation of section 137, subdivision (a), is two years. (§ 18, subd. (a).) Here, the term imposed on count 7 was eight months, equal to one-third the midterm.

defendant. While it is true that the trial court denied probation and imposed the upper term on count 1, the record does not conclusively show the trial court would not have exercised its discretion to impose a concurrent term on the dissuading conviction if it had known it had such discretion. Under the circumstances, we conclude that the appropriate remedy is to remand this case to give the trial court the opportunity to exercise its discretion in the first instance. (*Leon, supra*, 243 Cal.App.4th at pp. 1026-1027.)

IV

*Fines and Fees*

At sentencing, the trial court imposed the following fines and fees: a $300 restitution fine (plus $30 collection fee) under section 1202.4, subdivision (b), a $300 parole revocation restitution fine (stayed) under section 1202.45, a $40 court operations assessment under section 1465.8, and a $30 court facilities assessment under Government Code section 70373.

On appeal, defendant contends remand is required for an ability to pay hearing. Citing *Dueñas, supra*, 30 Cal.App.5th 1157, defendant argues that imposition of the fees and fines without a determination of his present ability to pay violates due process.

Since *Dueñas* was decided, a split in authority has developed among the appellate courts as to whether it was correctly decided. (See *People v. Taylor* (2019) 43 Cal.App.5th 390, 398 [discussing split]; *People v. Belloso* (2019) 42 Cal.App.5th 647, 649, review granted Mar. 11, 2020, S259755 [same].) Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which followed *Dueñas* in part. (*Kopp, supra*, at pp. 94-97, review granted.)

In the meantime, we join those courts that have found *Dueñas* to be wrongly decided, and hold that principles of due process do not require an ability to pay hearing before such fines and fees are imposed. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326-329, review granted Nov. 26,

20

2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1056; *People v. Adams* (2020) 44 Cal.App.5th 828, 831-832; *People v. Pack-Ramirez* (2020) 56 Cal.App.5th 851, 860; *People v. Cota* (2020) 45 Cal.App.5th 786, 793-795.) Thus, although we are remanding this matter for resentencing, we reject defendant's claim that due process entitles him to an ability to pay determination at the resentencing hearing.

V

*Errors in Oral Pronouncement of Judgment*

Based on our review of the record, we have identified errors in the court's oral pronouncement of judgment. Specifically, the trial court's oral pronouncement of judgment erroneously suggested a $300 restitution fine would be imposed "for each felony conviction," rather than a single fine per "case," as required under section 1202.4, subdivision (b). In addition, the oral pronouncement of judgment erroneously indicated that only one $40 court operations assessment and only one $30 court facilities assessment would be imposed, rather than separate assessments for each conviction.[11] (§ 1465.8; Gov. Code, § 70373.) In addition, the court failed to identify the statutory bases for the fines and fees it imposed. (*People v. High* (2004) 119 Cal.App.4th 1192, 1200.) "Although we recognize that a detailed recitation of all the fees, fines and penalties on the record may be tedious, California law does not authorize shortcuts." (*Ibid.*)

_____

[11]      Based on defendant's six convictions, the total amount assessed under section 1465.8 should have been $240 and the total amount assessed under Government Code section 70373 should have been $180. These figures are transposed in the court's minute order and abstract of judgment. Because we are remanding for resentencing, there is no need for us to correct the minute order or abstract of judgment as new ones will be prepared after resentencing.

21

Ordinarily, we would correct these relatively minor errors on our own.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.)  However, because we are remanding this matter for resentencing on other issues, we instead direct the trial court to correct the errors on remand.

DISPOSITION

Defendant's sentence is vacated and the matter is remanded for resentencing consistent with this opinion.  Upon resentencing, the trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


       KRAUSE       , J.


We concur:



     MURRAY     , Acting P. J.



     DUARTE     , J.