Filed 8/11/21  P. v. Watkins CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075132 |
| v. | (Super.Ct.No. FWV05337) |
| CHARLES EDWARDS WATKINS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Affirmed.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Seth M. Friedman and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

## FACTUAL AND PROCEDURAL HISTORY

A.  PROCEDURAL HISTORY

On December 29, 1994, a first amended information charged defendant and appellant Charles Edward Watkins with willfully and unlawfully transporting or selling marijuana under Health and Safety Code, section 11360, subdivision (a) (counts 1 through 4). As to each count, the amended information also alleged that defendant served a prior prison term and committed five prior serious and/or violent felonies under Penal Code sections 667, subdivisions (b) through (i), and 667.5, subdivision (b). Specifically, the information alleged that defendant was convicted of (1) rape by force in 1997; and (2) forcible rape, sodomy in concert by force, oral copulation in concert with force, and robbery in 1983.

On July 17, 1995, a jury found defendant guilty on counts 1, 2, and 3, and found true that defendant had four prior serious and/or violent felony convictions. The court dismissed count 4 and ordered the remaining enhancement stricken. On September 8, 1995, the trial court sentenced defendant to an indeterminate term of 25 years to life on count 1, and a concurrent term of 25 years to life on counts 2 and 3.

On February 4, 2019, almost 24 years after defendant's sentencing, he filed a petition to have his felony marijuana convictions reduced to misdemeanors, which the court construed as a petition for recall and resentencing under Proposition 64. At the hearing on February 20, 2020, the trial court denied defendant's petition.

Defendant appeals. For the reasons set forth *post*, we affirm.

B.     FACTUAL HISTORY[1]

On April 26, 1994, Ontario Police Officer Neiman was working undercover and staying at the Ontario Residence Motel.  During this time, Neiman met defendant.  Defendant asked Neiman for a ride to different locations to pick up marijuana and cocaine.  Defendant offered Neiman some marijuana and cocaine for his services.  Although defendant was unable to obtain the cocaine, he got approximately two ounces of marijuana from one location and four small clear plastic baggies of marijuana at another location.  Defendant told Neiman that he wanted to deal with Neiman and his friends.

Once they returned to the motel, Officer Neiman told defendant that he was interested in buying marijuana.  Neiman handed defendant $20 and defendant, in turn, handed Neiman three clear plastic baggies containing marijuana.  Defendant indicated that he could get quantities of up to five pounds of marijuana for about $500 per pound.

The next day, when defendant and Officer Neiman were in a room at the motel, defendant asked Neiman if he wanted more marijuana.  Neiman asked for approximately one-half ounce of marijuana.  Defendant told Neiman it would cost $50, and asked Neiman for a ride to the area where he could make the purchase.  Neiman drove defendant to an apartment, gave him $30, and waited in the vehicle while defendant left to purchase the marijuana.  When defendant returned to the vehicle, he stated that he

---

[1] The facts are taken from the probation department's sentencing report.  Because the appeal pertains to defendant's Proposition 64 petition, the facts related to defendant's underlying convictions are brief.

3

could not get everything he wanted but was able to get 10 small clear plastic baggies containing marijuana.

## DISCUSSION

A.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANT'S PETITION

On appeal, defendant contends that "the trial court abused its discretion when it denied [defendant's] petition seeking reduction of his felony marijuana convictions and to be resentenced accordingly."  (Caps. omitted.)

### 1.  *ADDITIONAL FACTS*

On February 4, 2019, defendant filed his Proposition 64 petition for relief.  On August 9, the People filed an opposition arguing that defendant's prior history established that defendant is currently dangerous and resentencing him would pose an unreasonable risk of danger to the community.

Specifically, the People requested that the court deny defendant relief because "his criminal career includes multiple convictions for incredibly violent and callous acts of sexual violence towards women" that "increased in sophistication and cruelty as time went on."  In support of the opposition, the People included four exhibits:  (1) the probation department's report regarding defendant's 1983 convictions for forcible rape, sodomy in concert by force, oral copulation in concert with force, and robbery; (2) the preliminary hearing transcript regarding the 1983 convictions; (3) the probation department's report regarding defendant's 1995 marijuana convictions; and (4) defendant's criminal report.  The People argued that defendant's criminal history

4

showed "an escalating exhibition of force towards women, a complete lack of remorse, and an increase in criminal activity" such that defendant "is likely to reoffend and commit a super strike offense."

On February 5, 2020, the trial court held a hearing on the petition. The parties stipulated that Proposition 64 applied to defendant's convictions. The determinative issue was whether defendant posed an unreasonable risk to public safety. The parties also stipulated to the foundation and admission of 10 exhibits consisting of the following: defendant's prison records; certified prison packets and probation and sentencing reports for defendant's convictions in 1977, 1983, and 1995; defendant's certified rap sheet; defendant's Static-99R; and the preliminary hearing transcript of the 1983 conviction.

After the exhibits were admitted, the People rested. Defense counsel then called defendant to the stand.

### a. Defendant's Testimony

Defendant testified that at his first parole hearing in 2017, he was denied parole. The parole board did note that defendant showed "signs of remorse for his criminal actions" in his testimony at the parole hearing. The parole board additionally noted that defendant had engaged in "positive programming and self-help programming," his age "reduces the probability of recidivism," and defendant has "made realistic plans for release or has developed marketable skills that can be put to use upon release."

Defendant also testified that he has lacked "serious or violent rule violations in the past 12 years" while he was in prison. Defendant stated that he has never had a serious violation of rules since he entered prison in 1995. Although defendant had several minor

incidents such as stealing food from his work area, leaving his assigned work area, talking loudly instead of performing his assigned tasks, no disciplinary actions were taken against him. Moreover, he had been approved to be double-bunked which indicated that defendant was not violent and did not have a history of problems. Defendant's classification points, or threat risk, never went up. Instead, they have always gone down.

Defendant went on to testify about classes he attended, such as Narcotics and Alcoholics Anonymous, working in prison, and earning college credits. Defendant also obtained certificates of completion for various programs, such as denial management, because he wanted to learn how to deal with situations in a positive and non-violent manner.

Defendant testified that his denial management helps him deal with his past sex offenses, which he committed when he was 19 years old and in his early twenties. Defendant started therapy in 2017, as soon as he was given the opportunity to participate. Defendant stated he has individual therapy three hours per session, twice per month. These sessions have helped him "tremendously." He also learned that he had an addiction and is working with a psychiatrist to identify "situations that could become uncontrollable."

Defendant went on to testify that through therapy, he learned that he can no longer have sex casually. He stated, "I reserve my sexual activities for my relationships now. Where before I paid for it, give drugs for it, or just willingly free. Now it's more important to me that I'm in a relationship or involved with someone and treasure the

6

aspect of sex more dearly.  I can't just go crazy and do it like that, so I limit my sex output now."  When asked whether defendant understood the idea of consent and how horrifying the crime he committed was, defendant responded that he understood sex should be something "that both people would choose to have. . . .  I have to respect other's opinion now, where before I didn't.  When I was a kid I just, it was about me, now it's more about respect for others."

Defendant also testified that he never wanted to return to prison and that he had a strong incentive to stay out of prison:  "It's so strong to the point that I won't be having sex for awhile until I find that relationship that I feel comfortable with."

Defendant, who had been in prison for 25 years at the time he testified, stated that he had been clean and sober for 15 years, and knew that he would "be in NA and AA for the rest of my life" and that he would continue with psychological treatment, too.

Defense counsel asked defendant about the Static-99R report, which described defendant as being in a category in which 11 percent of those with his risk score would "within five years have some sort of recidivism."  Defendant responded, "I have not done it in 40 years, it was 40 years ago when I committed those offenses, and I haven't done it in 40 years.  And I'm 62 now, today as a matter of fact, that I would [n]ever have energy or attempt to do anything like this ever again.  Like you said, those are pretty old offenses that I did my time for, I got out and haven't committed anything near those offenses since, it's been 40 years."

When asked how defendant would make a living if he got out of prison, defendant testified that he had previously worked as a truck driver.  However, because of his age

7

and health issues, he "could cook for the public" and open his own business. He also hoped to obtain state assistance, as well as social security, to help provide a steady income and prepare him to get reestablished into society.

Under cross-examination, defendant admitted that he was convicted of forcible rape of a woman in 1977, and of sodomy in concert, forcible rape, and forcible oral copulation of a woman in 1983. In 1977, when he punched, dragged, and forcibly raped the victim, defendant was 19 years old. He was also married with a pregnant wife. Defendant was in custody in the youth authority from 1997 until 1981.

Defendant went on to testify that he was arrested in 1982. In that case, defendant and "another guy" took the victim from her home in a residential area to a secluded area. Both defendant and the other man raped the victim, and the other man forced the victim to orally copulate him. Defendant did not recall the victim being threatened and his understanding was that she was a willing participant. He admitted there was "a lot of alcohol" and "some pretty heavy drugs" involved so his understand could have been wrong. Defendant was sentenced to nine years in state prison. He was paroled in 1987.

Defendant testified that in 1993, he was sentenced to two years for violating Health and Safety Code section 11351. In 1994, he was convicted of petty theft with a prior under Penal Code section 666, and sentenced to 365 days in jail. In 1995, he was convicted of the marijuana violations in this case. At the time of the hearing on the resentencing petition, defendant had spent about 34 of the previous 43 years in custody.

On redirect examination, defendant stated that he realized he did not recall his prior sex offenses very well. When defense counsel asked whether defendant understood

8

that his responses to the prosecutor's questions contained "a significant amount of denial," defendant relied, "yes." When counsel asked why defendant did not dig deeper into these issues, defendant stated: "I've tried to recall those incidents to the best of my ability, but I'm not making excuses or trying to cover anything up, but the drugs, we were really, really wasted."

When defense counsel pressed defendant to explain how he was "going to fix this if [he were] released," defendant responded: "I can't go back and change the time or make a difference. All I can do is make sure my future, that none of this ever happens again by not putting myself in positions like that for it to happen. . . . [¶] . . . [¶] . . . I wish I could apologize to the victim so I could move on and hopefully she can to[o]. I accepted that it happened, but I have to move on and make sure my future doesn't involve anything like this."

After the prosecutor and defense counsel concluded their questioning, the trial court recalled that defendant testified that he had never sustained a CDCR 115 violation. Thereafter, the court asked defendant if that was still defendant's testimony. Defendant replied: "I had one issue with food and that was the only one I ever had." The court then directed the parties to the Risk Assessment Report prepared prior to the parole hearing and the Life Prison Progress report. Both reports indicated that defendant suffered a CDCR 115 in 2005. The court clarified that defendant was not discipline free given that he was "found guilty of administrative offense 115 CDCR" and had several "CDCR 128 cronos." Notwithstanding, the court remarked that defendant had "basically, from a disciplinary standpoint, done very, very well" and did not have any "significant

9

disciplinary actions," but only "relatively minor" incidents from 1995 through the present.

The trial court then inquired about one other major issue regarding a remorse letter submitted and discussed during defendant's parole hearing. Pursuant to the parole transcript, defendant stated that were he not sent to prison for life, he would have probably hurt another woman. When the court asked defendant to expand on the statement, defendant explained that being under the influence of drugs "changes the person that you are and that made anything possible. And had I continued to do drugs the way I was doing them and believing that I can deal with it, it possibly could have happened."

### b. The Court's Ruling

At the conclusion of the hearing, the trial court stated that it intended to look over all the documents to be fair to defendant and the People. The court stated it would "read all the materials again, all the exhibits again," and then issue a written order.

On February 20, 2020, the trial court issued a nine-page written order denying defendant's petition.

In the order, the trial court noted that admissible evidence in a hearing to determine whether a defendant is dangerous "appears to be broad in scope in light of the factors set forth under Health & Saf. Code § 11361.8(b) in conjunction with Penal Code §1170.18(b) and is not limited to the record of conviction. The court went on to note the following:

"(1) [Defendant]'s criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes.

"(2) [Defendant]'s disciplinary record and record of rehabilitation while incarcerated.

"(3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

After considering these factors, the exhibits and evidence, the trial court found that the prosecution "has established that there is an unreasonable risk [defendant] will commit a new violent felony—a 'super strike' and, as such, [defendant] meets the dangerousness requirement within the meaning of Health & Saf. Code §11361.8(b)(2). [Defendant] has four convictions for offense set out in Pen. Code §667(e)(2)(C)(iv) and the circumstances surrounding the commission of these crimes, in addition to a variety of other factors, has warranted particular attention in the court reaching this conclusion."

The court then went on to find that defendant "had engaged in significant violent conduct that represents a pattern of violent conduct toward women that creates an unreasonable risk that a super strike will be committed if he is granted the requested relief. This conduct is clearly reflective of dangerousness. His victims were extremely vulnerable and his participation in these crimes evidence a disdain, disrespect and callous indifference to their physical and emotional condition."

11

The court discussed the details of defendant's super strike convictions in 1977 and 1982. It found that the nature and circumstances of defendant's current marijuana convictions suggested that he "will commit a 'super strike' offense" in the future, citing the parole board hearing for the finding that "there is a direct nexus between these life crimes and his multiple sexual offense convictions because his 'drug dealing,' and the promise of drugs and alcohol to women, created or heightened [defendant]'s sexual desires resulting in sadistic attacks upon defenseless victims."

The court noted:

"[Defendant]'s criminal history supports the ultimate conclusion that he continues to pose an unreasonable risk that he will commit another violent sexual offense against women. It demonstrates a disdain, hostility, and disrespect for women which has culminated in the commission of violent sexual offenses against them—a disposition the court is convinced has not yet been dissipated and mitigated by [defendant]'s lengthy incarceration in state prison or efforts toward rehabilitation."

The court also elaborated on "other significant considerations and factors that support the court's finding that [defendant] poses an unreasonable risk to public safety," including the Static-99 report and the Comprehensive Risk Assessment report from the parole board hearing.

Thereafter, the court acknowledged that defendant's disciplinary record in state prison was generally favorable and that defendant "has taken steps to address his sexual proclivities and addiction through positive programming," and the facts of "his advanced age, passage of time, and attendant changes in his psychological and mental attitude."

12

The court, however, found that "these circumstances are outweighed by factors set forth above, specifically [defendant]'s commission of violent sexual offenses in a reckless, sadistic, and heinous fashion and with blatant disregard for the safety and well-being of his victims, previous record of violence, circumstances surrounding the commission of his life crime, substance abuse, sexual addiction, unstable social history, and [defendant]'s admission in a remorse letter submitted at the Prole Hearing that, if it had not been for the three-strikes conviction, he probably would have hurt another woman."

Furthermore, the trial court did not find defendant's testimony to be credible or persuasive "concerning his acknowledgment or understanding of his present psychological issues and efforts to address his sexual addiction or substance and alcohol abuse." The court found that, although defendant "has done well in a highly structured environment where his behavior and addictions can be effectively managed, he has experienced significant difficulty following laws in the community when released from custody."

## 2. *LEGAL BACKGROUND AND STANDARD OF REVIEW*

Health and Safety Code section 11361.8 allows persons serving sentences for certain marijuana-related offenses to petition for a recall or dismissal of a sentence. (Health & Saf. Code, § 11361.8, subd. (a); *People v. Taylor* (2021) 60 Cal.App.5th 115, 120.) Eligible petitioners are entitled to relief "unless the court determines that granting the petition would pose an unreasonable risk of danger to public safety." (Health & Saf. Code, § 11361.8, subd. (b).) This means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of Penal Code section 667, subdivision

13

(e)(2)(C)(iv), a super strike.  (Health & Saf. Code, § 11361.8, subd. (b)(2); Pen. Code § 1170.18, subd. (c); *People v. Saelee* (2018) 28 Cal.App.5th 744, 751-752.)  The list of "super strikes" includes certain sexually violent offenses, other specific sex crimes, and any serious or violent felony punishable by life imprisonment or death.  (Pen. Code, § 667, subdivision (e)(2)(C)(iv); *People v. Valencia* (2017) 3 Cal.5th 347, 351.)

The trial court's determination of unreasonable risk of danger is reviewed on appeal for abuse of discretion.  (Health & Saf. Code, § 11361.8, subd. (b)(1); *People v. Saelee*, *supra*, 28 Cal.App.5th at pp. 748-749.)  "A court abuses its discretion 'whenever the court exceeds the bounds of reason, all of the circumstances being considered.'" (*People v. Downey* (2000) 82 Cal.App.4th 899, 909.)

3.    *ANALYSIS*

In this case, defendant contends that the trial court abused its discretion in denying his petition to recall his felony sentence and reduction of his felony convictions to misdemeanors.  In sum, defendant contends that the trial court erred in denying his petition because "the trial court failed to give proper weight to such factors as the remoteness in time of [defendant's] prior serious felony convictions, his age and physical limitations at the time his petition was heard, the evidence of his rehabilitation, and the lack of violence or serious disciplinary offenses during the 25 years he has been in state prison since he was convicted of his marijuana offenses."  Defendant also states that the court "erred in its interpretation of the Staatic-99R report and the likelihood that someone in [defendant's] risk category would be charged or convicted of another serious sex offense within five years following his release from prison."  For the reasons set forth

14

*post*, we find that the trial court did not abuse its discretion in denying defendant's petition.

First, defendant contends that the court abused its discretion in denying his petition due to his "age and diminished physical capacity." He contends that his last sexual assault case occurred when he was 24 years old and he was 62 years old at the time of the hearing and "living with a number of serious health problems and had spent approximately 25 years in prison." The trial court was well aware of when defendant committed his last sexual assault, his age and his diminished physical capacity. Although the court did not specifically address defendant's medical history in its order, the court heard defendant's testimony and his physical issues and was very familiar with all the evidence relating to defendant. The court specifically noted that "although [defendant] is 62 years old, should the court grant the Petition, he would be released immediately into the community without supervision, monitoring, or treatment." "While a person may 'slow down' with age, it does not necessarily follow that interest in sexual deviancy slows down." (*People v. Hoffman* (2021) 61 Cal.App.5th 976, 978-979.) While defendant focuses on his age, declining health and the diminishing likelihood that he would reoffend based on those factors, he fails to recognize that the court found that defendant lacked insight into his offenses and had minimal targeted treatment for his psychological issues related to his offenses.

Defendant additionally contends that the trial court minimized the remoteness of his prior crimes: "The trial court also failed to attach proper significance to the remoteness in time of [defendant's] prior super strike convictions at the time of the

15

hearing on his resentencing petition for the marijuana convictions—nearly four decades after his more recent sex crime incident, and more than four decades between the other. The trial court wrote that there was a 'nexus' between the 1995 marijuana offenses and the 1977 and 1982 sex crimes, relying on comments by commissioners at the 2017 parole board hearing." Again, we disagree with defendant.

Here, the trial court specifically addressed that "a good deal of time has passed" since defendant committed his super strike sex offenses. Moreover, as noted *ante*, the trial court took the case under submission to "read all the materials again, all the exhibits again," and then issue a written order. After thoroughly reviewing the circumstances of this case, the trial court found that the "passage of time" was overshadowed by the "circumstances surrounding the commission of his life crime, substance abuse, sexual addiction, unstable social history, and [defendant's] admission . . . that, if it had not been for the three-strikes conviction, he probably would have hurt another woman." Even the forensic psychologist who assessed defendant in 2017 noted that "there appear few indications of psychosocial maturation or personality change as [defendant] has aged despite extensive incarceration."

Moreover, evidence in the record did support a finding that defendant's substance abuse and sexual violence were connected. Defendant's examining psychologist opened that defendant had a poor grasp of substance abuse relapse prevention and emphasized that "the links between relapse and criminality, including sexual violence, appears fairly clearly established." Moreover, the panel at defendant's 2017 parole hearing highlighted the "direct nexus" and "direct link" between defendant's substance abuse use and his sex-

16

based crimes. Additionally, although defendant has stated that he will continue attending AA and NA meetings and remain sober if he is released, defendant's sobriety has only occurred while incarcerated. Once he is released and experiences the stressors he identified as triggers for substance abuse, it is impossible to assess what defendant will do. The trial court properly assessed the remoteness of the previous crimes with defendant's current progress and determined that the remoteness of the crimes does not outweigh other factors showing defendant posed a danger.

Additionally, defendant contends that the trial court erred in concluding that defendant's hostility toward and disdain for women posed a danger to society. Again, we disagree.

During his testimony, defendant casually stated he would "no longer" put himself in "positions like that again," i.e. violently rape women, but instead would reserve his sexual activities for relationships. Defendant never stated that he was sorry or was remorseful for the heinous acts he committed against the victims. Instead, he kept mentioning that there were drugs involved when he committed the offenses and that he would seek consent in the future. As provided above, defendant stated, "I can't go back and change the time or make a difference. All I can do is make sure my future, that none of this ever happens again *by not putting myself in positions like that for it to happen. . . .* [¶] . . . [¶] . . . I wish I could apologize to the victim *so I could move on* hopefully she can to[o]. I accepted that it happened, but I have to move on and make sure my future doesn't involve anything like this." (Italics added.) Although defendant acknowledged what he did—he again tried to blame the crimes because he was in a state, *not* because he

17

chose to commit the crimes. Moreover, although he mentioned apologizing, it was so he could move on. And, as an afterthought, so the victim could move on. Nothing in his testimony showed true remorse and an acknowledgement of the truly horrific nature of his past crimes. Moreover, although the court acknowledged that defendant was taking steps to improve himself by undergoing therapy for his sexual addiction, the treatment began in late 2017 "and no evidence was introduced as to the status of [defendant]'s psychological progress." The court went on to note that it did not find defendant's testimony "to be credible or persuasive concerning [defendant's] acknowledgment or understanding of his present psychological issues and efforts to address his sexual addiction or substance and alcohol abuse." The credibility determination was for the trial court to make. Here, we discern no abuse of discretion by the trial court in making this determination.

Finally, defendant contends that the trial court improperly relied on "the erroneous Static-99R calculation of risk level of reoffending." Defendant's argument is without merit.

We note that whether the court considered the risk level based on his age at the time the Static-99R report was prepared or his risk level at the time of the offenses, the assessment showed that defendant's risk level for committing another sexual offense in the near future was either "above average" or "well above average," as noted by defendant in his opening brief. Moreover, because neither assessment revealed that defendant posed *only* a minimal risk or had a negligible risk of reoffending, combined

18

with the other factors listed by the court, the court properly found that defendant posed an unreasonable risk of danger to public safety.

In sum, we find that the trial court carefully reviewed and weighed the documents and testimony when denying defendant's petition. The court, in its order, stated:

"It is true that a good deal of time has passed since [defendant] committed these 'super strike' sexual offenses and his disciplinary record in state prison has been generally favorable. . . . [¶] The court has considered that [defendant] has taken steps to address his sexual proclivities and addition through positive programming and, coupled with his advanced age, passage of time, and attendant changes in his psychological and mental attitude. However, the court finds that these circumstances are outweighed by factors set forth above, specifically [defendant]'s commission of violent sexual offenses in a reckless, sadistic, and heinous fashion and with blatant disregard for the safety and well-being of his victims, previous record of violence, circumstances surrounding the commission of his life crime, substance abuse, sexual addiction, unstable social history, and [defendant]'s admission in a remorse letter submitted at the Prole Hearing that, if it had not been for the three-strikes conviction, he probably would have hurt another woman. Moreover, although [defendant] is currently undergoing therapy for his sexual addiction, according to his testimony, such treatment began in late 2017 and no evidence was introduced as to the status of [defendant]'s psychological progress. The court did not find [defendant]'s testimony to be credible or persuasive concerning his acknowledgment or understanding of his present psychological issues and efforts to address his sexual addiction or substance and alcohol abuse. [Defendant] has demonstrated that, although

19

he has done well in a highly structured environment where his behavior and addictions can be effectively managed, he has experienced significant difficulty following laws in the community when released." (Fn. omitted.)

Based on the trial court's careful analysis of the facts and law in this case, we cannot say that the court's order denying defendant's petition exceeds the bounds of reason. Therefore, we discern no abuse of discretion.

## DISPOSITION

The trial court's order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.

20