Filed 3/9/23  P. v. Ruiz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANDRES RUIZ,<br><br>Defendant and Appellant. | F083496<br><br>(Super. Ct. No. F20905432)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Smith, J. and Meehan, J.

Defendant Andres Ruiz challenges the sentence he received after being found guilty by a jury of committing four crimes involving one victim. Our review of the sentence imposed in this case and the relevant statutory authority leads us to conclude this matter must be remanded for resentencing.

## PROCEDURAL AND FACTUAL SUMMARY

The circumstances of this case involve incidents that occurred on two separate days. On August 12, 2020, just after midnight, R.N. returned to her house in Fresno after driving from Mexico for approximately 11 hours. R.N. travelled to Mexico to visit her family. Living with R.N. at the time were her sons and defendant, who had moved into the house in December 2019 after the couple had dated for approximately two months.

Soon after arriving at her home, R.N. testified she went to her bedroom, changed clothes, and got into bed next to defendant who she thought was asleep. Defendant was not asleep and asked for sex. When R.N. stated she was tired after the long drive and just wanted to go to sleep, defendant became angry and started calling her names and questioning why she had taken an extra day for the trip. After R.N. tried to calm defendant down, he jumped on top of her, and a violent struggle ensued. During this struggle, defendant partially removed R.N.'s pajama pants and engaged in intercourse with her against her will. When asked if she called the police, R.N. admitted she had not, explaining she had been in shock that this occurred in her home while her children were in another room. The next morning R.N. noticed a scratch on her right arm, and that the headboard of the bed had been cracked. R.N. testified she asked defendant to move out of the house. At first, defendant acted as if he did not hear her, but then asked to have until the end of the month. R.N. stated in court she did not believe defendant would leave voluntarily.

On August 15, 2020, R.N. testified defendant called her early in the afternoon to tell her he was coming home and would be taking her out. As they were preparing to go out, R.N. and defendant argued about a car they helped R.N.'s son purchase. Sometime

2.

during the argument, R.N. decided she would not go out with defendant and moved to the kitchen to put some groceries away. When she returned to the bedroom, R.N. noticed defendant getting angrier and angrier. While they were arguing again, defendant took R.N.'s phone out of her hand after she threatened to call the police, and threw it on the dresser. R.N. ran to the dining room where there was an alarm panel for the house and set off the alarm. R.N. testified defendant could not believe she had actually set off the alarm and became even angrier. When she told him to leave, he went into the bedroom yelling at her and making noises she thought meant he was collecting his things to leave, but she later discovered was defendant punching her dresser.

Once defendant actually started to collect his things to leave, R.N. turned off the alarm. R.N. then described how defendant ran toward her and pushed her against the wall, repeatedly. When R.N. was able to get away, she ran toward the back door, but was grabbed again by defendant, who started to pull her toward the bedroom. Once again, R.N. managed to get away from defendant and set off the alarm. R.N. told defendant to leave, which after another struggle, defendant finally agreed to do when he observed two sheriff's deputies had arrived. R.N. described to one of the deputies why she had set off the alarm, but also eventually provided information about what happened on August 12, 2020. The deputy then informed R.N. that they would be arresting defendant.

Following a preliminary hearing, an information was filed on July 1, 2021, charging defendant with committing corporal injury upon a cohabitant who he was in a dating relationship with (Pen. Code,[1] § 273.5, subd. (f)(1), a felony; count 1), forcible rape (§ 261, subd. (a)(2), a felony; count 2), dissuading a witness by force or threat (§ 361.1, subd. (c)(1), a felony; count 3), and battery (§ 243, subd. (e)(1), a misdemeanor; count 4). A special allegation attached to count 1 also alleged defendant had suffered a prior conviction of section 273.5, subdivision (f)(1), within the last seven years. Another

---

[1]     All further statutory references are to the Penal Code.

special allegation attached to count 2 provided notice to defendant that the crime alleged in count 2 would be considered a serious felony within the meaning of section 1192.7, subdivision (c).

On July 12, 2021, a jury returned verdicts finding defendant guilty of committing the crimes alleged in all four counts, and further found true the allegation that the crime alleged in count 3, involving dissuading a witness, was committed maliciously and through the use of force, the threat of force, or violence. When sentencing defendant in October 2021, the trial court stated as follows:

> "Having weighed and looked at the evidence, the Court does believe that the middle term is appropriate. I understand the victim—I understand the People's request to have the defendant committed to state prison for the 11 years that's recommended. The Court does believe, though, that the middle term is appropriate in Count 2 which is a 261(a)(2) and that's a 6-year exposure. Count 4—I'm sorry, Count 1. I apologize. Count 1, Penal Code 273.5(f)(1) will run concurrent to the main count. However, Count 3 pursuant to 1170.15, the Court is mandated to impose consecutively at a rate of the full middle term. The Court accepts that representation. I have not heard any opposition to that and it will be a 3-year full term for a total term of 9 years."

The abstract of judgment filed in this case reflects defendant received a sentence of six years for count 2 (forcible rape), a concurrent term of four years for count 1 (corporal injury), and a full consecutive middle term of three years for count 3 (dissuading a witness). A sentence for count 4 is not reflected on the abstract of judgment, however, during sentencing the trial court indicated defendant would receive credit for time served.

## DISCUSSION

Defendant does not challenge the jury verdict and does not raise any issues impacting his conviction. Defendant's focus in this appeal is on the sentence he received.

4.

**I.      This Matter Must Be Remanded For Resentencing**

      **A.      The Full Consecutive Middle Term For Dissuading a Witness**

Defendant makes two claims when challenging the sentence he received on count 3 for dissuading a witness.  First, defendant states a full consecutive term was unavailable because such a term could only be imposed if the crime was attached to a felony.  Defendant is assuming the trial court linked count 3 to count 4 for battery because they were alleged to have occurred on the same date, August 15, 2020.  Count 4 was charged as a misdemeanor.  Defendant's second challenge argues the court failed to exercise discretion and seemed to believe it was required to impose the full middle term consecutively.  The People agree this case must be remanded for resentencing because the court appeared to believe it had no discretion under section 1170.15 to select a concurrent sentence for count 3.

We address defendant's second claim regarding the exercise of discretion first.  A trial court has broad discretion under the existing sentencing scheme, and therefore, decisions about sentencing will be subject to a review for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, superseded by statute on other grounds.)  "Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion."  (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

Section 1170.15 states in relevant part:

> "Notwithstanding subdivision (a) of Section 1170.1 which provides for the imposition of a subordinate term for a consecutive offense of one-third of the middle term of imprisonment, if a person is convicted of a felony, and of an additional felony that is a violation of Section 136.1 or 137 and that was committed against the victim of, or a witness or potential witness with respect to, or a person who was about to give material information pertaining to, the first felony, …, described the subordinate term for each consecutive offense that is a felony in this section shall consist of the full

5.

middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed …."

The court in *People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1480, held that error occurred in that case because the trial court did not understand it had discretion to impose a concurrent sentence. The *Woodworth* court considered other statutes governing sentencing decisions noting that some stated clear requirements for choosing a consecutive term over a concurrent term.[2] The court then went on to note, " '[a]bsent an express statutory provision to the contrary, section 669 provides that a trial court shall impose either concurrent or consecutive terms for multiple convictions.' " (*Woodworth*, at p. 1479, citing *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262.) Therefore, the *Woodworth* court concluded that unless there was a statutory requirement to choose a consecutive term, the trial court still had the ability to exercise discretion and consider the possibility of imposing a concurrent term. (*Woodworth*, at p. 1480.) The *Woodworth* court eventually held, if the consecutive term was selected for a count involving a conviction for dissuading a witness after exercising discretion, then section 1170.15 would require that consecutive term be for the full middle term. (*Woodworth*, at p. 1480.)

The language employed by the trial court when sentencing defendant suggests a belief it lacked discretion and was required to impose the consecutive sentence for count 3. Because the trial court did not exercise discretion to consider whether a concurrent term was warranted in this case, the matter must be remanded for resentencing. (See *People v. Downey* (2000) 82 Cal.App.4th 899, 912.)

---

**2** A current example of the type of language the *Woodworth* court was referencing is found in the new version of section 667.61, subdivision (i) which states, "[f]or any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), or in paragraphs (1) to (6), inclusive, of subdivision (n), *the court shall impose a consecutive sentence* for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (Emphasis added.)

### B.	Was Section 1170.15 Available As a Sentencing Option?

Case law has held that section 1170.15 provides an alternative sentencing scheme, not an enhancement to a sentence that would require separate pleading and proof. (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1834.)  As a result, there is no need to provide additional evidence that the defendant intended to dissuade a witness from reporting a *particular crime*.  (*Ibid.*, emphasis added.)  "[T]he sentencing judge need only determine if that crime was a felony of which the defendant was convicted; the dissuasion sentence quite obviously cannot run fully consecutively to an underlying offense for which the defendant was not convicted."  (*Id.* at p. 1835.)

In a case with some factual similarities to our case, the court in *People v. Evans* (2001) 92 Cal.App.4th 664 (*Evans*), discussed the language of section 1170.15 and its interpretation by the court in *Hennessey*.  The *Evans* court summarized its relevant facts as follows:

> "Defendant's conviction for dissuading a witness was based on his statement to his wife in January 1998, after he choked her, that she 'better not tell his probation officer …' of the incident.  If defendant had been convicted of a felony for choking his wife, then section 1170.15 would have applied, because defendant's dissuasion conviction for attempting to prevent his wife from reporting the choking incident would have been related to another felony of which he was also convicted.  The jury, however, acquitted defendant of the felony assault charge in the choking incident and convicted him of only misdemeanor battery.  Thus, the dissuasion for which defendant was convicted did not relate to another a felony, but to only a misdemeanor, and therefore section 1170.15 did not apply."  (*Evans*, *supra*, 92 Cal.App.4th at p. 670.)

When considering these facts in light of the language provided in *Hennessey*, the *Evans* court held, "the dissuasion for which the defendant was convicted must relate to another felony, of which the defendant was also convicted." (*Id.* at p. 670.)

Again, pursuant to *Hennessey*, section 1170.15 provides an alternative sentencing scheme and should not be viewed as an enhancement that would have required separate pleading and proof.  Therefore, when exercising discretion on the question of whether to

7.

impose a full consecutive term under section 1170.15, the trial court will first have to address whether defendant's conviction for dissuading a witness related to another felony "of which [he] was also convicted." (See *Evans*, *supra*, 92 Cal.App.4th at p. 670.)

Defendant encourages this court to address this issue as a pure question of law and conclude that the full consecutive middle term specified in section 1170.15 was not available because the conviction in count 3 was related to the conviction in count 4, which was a misdemeanor. We are unwilling to take that course of action for the same reason it was rejected by the court in *Evans*. " 'The wiser course is to remand for resentencing rather than have us hazard a guess in the first instance as to the likely sentence that would have been imposed had the trial court been advised of our interpretation.' " (*Evans*, *supra*, 92 Cal.App.4th at p. 670, citing *People v. Scott* (1993) 17 Cal.App.4th 1383, 1388.)

## II.    The Concurrent Term For Count 1

Under section 654, when a defendant faces convictions for acts or omissions "punishable in different ways by different provisions of law," that defendant may face punishment under either provision, but not both. In this case, defendant was charged in two counts for the same act. In count 1, defendant faced a charge of corporal injury to a cohabitant he was in a dating relationship with. In count 2, defendant was charged with forcible rape. Defendant alleges and the People concede that these charges were based on the same set of facts and that no separate objective existed in the sequence of events leading to the separate charges. We see no reason on the record to disagree with that conclusion.

Therefore, "rather than dismissing charges or imposing concurrent sentences, when a court determines that a conviction falls within the meaning of section 654, it is necessary to *impose* [a] sentence but to stay the *execution* of the duplicative sentence …." (*People v. Duff* (2010) 50 Cal.4th 787, 796.) The stay is effective pending the successful

completion of the sentence not stayed, at which time the stay becomes permanent. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.)

When this matter is remanded for resentencing, we note there is one more change the trial court must consider before choosing a sentence for counts 1 and 2. Specifically, until recently, section 654 required trial courts to impose a sentence "under the provision that provides for the longest potential term of imprisonment." (Former § 654.) "In 2021, however, the Legislature enacted Assembly Bill No. 518 (2021−2022 Reg. Sess.) (Stats. 2021, ch. 441), which removes the requirement to impose the longest prison term." (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.) As a result, a trial court now must exercise discretion to select one or the other provision as providing the sentence the defendant receives, not necessarily the one that imposes the longest sentence.[3] (*Ibid.*)

### DISPOSITION

The judgment is affirmed. The sentence imposed is vacated, and the matter is remanded for resentencing. Following resentencing by the trial court, the abstract of judgment shall be amended and a certified copy forwarded to the appropriate authorities.

---

[3] Under the principles laid out in *In re Estrada* (1965) 63 Cal.2d 740, Assembly Bill No. 518 (2021−2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1(a)) applies retroactively to defendant whose conviction was not yet final when the law went into effect on January 1, 2022.